# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 1, 2015 Session

## PAUL J. WALWYN v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Circuit Court for Davidson County**
**No. 14C326     Don R. Ash, Senior Judge**

_____

**No. M2015-00565-SC-R3-BP – Filed December 3, 2015**

_____

A Hearing Panel of the Board of Professional Responsibility (the "Hearing Panel") found that an attorney's handling of three separate criminal appeals violated certain ethical rules. See Tenn. Sup. Ct. R. 8, RPC 1.3, 1.4, 3.2, and 8.4(a), (d). The Hearing Panel suspended the attorney from the practice of law for six months and ordered him to serve thirty days' active suspension and five months' probation. The attorney appealed, and the trial court affirmed the Hearing Panel's judgment. On appeal to this Court, the attorney contends that the Hearing Panel abused its discretion and acted arbitrarily and capriciously. Additionally, the attorney argues that the attorney disciplinary process in Tennessee is unconstitutional. After carefully reviewing the record and applicable law, we affirm the judgment of the trial court upholding the Hearing Panel's decision.

### Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Circuit Court Affirmed

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Paul Walwyn.

Krisann Hodges, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

# OPINION

## I. Factual and Procedural Background

### A. Prehearing Facts

This appeal arises from a disciplinary proceeding involving Paul Julius Walwyn, a Nashville lawyer whose practice focuses primarily upon criminal defense work. The Board of Professional Responsibility (the "Board") filed an initial petition for discipline against Mr. Walwyn on September 7, 2012, and filed a supplemental petition on April 1, 2013.[1] These petitions included three separate complaints against Mr. Walwyn pertaining to his appellate representation of criminal defendants Cristobal Lara ("the Lara case"), Deonte Alesio Matthews ("the Matthews case"), and James Tremelle Hunt ("the Hunt case"). With respect to the Lara case and the Matthews case, the Board alleged that Mr. Walwyn had violated Tennessee Rules of Professional Conduct ("RPC") 1.3, Diligence;[2] 3.2, Expediting Litigation;[3] 3.4(c), Fairness to Opposing Party and Counsel;[4] and 8.4(a) and (d), Misconduct.[5] With respect to the Hunt case, the Board alleged that Mr. Walwyn had violated RPC 1.1, Competence;[6] 1.3, Diligence; 1.4, Communication; 3.2, Expediting Litigation; and 8.4(a) and (d), Misconduct.

---

[1] This disciplinary proceeding was initiated prior to January 1, 2014, when this Court adopted substantial revisions to Tennessee Supreme Court Rule 9. This appeal is therefore governed by the pre-2014 version of Tennessee Supreme Court Rule 9, and references in this opinion are to the pre-2014 version of Rule 9.

[2] RPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[3] RPC 3.2 provides: "A lawyer shall make reasonable efforts to expedite litigation."

[4] RPC 3.4(c) provides: "A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal, except for open refusal based on an assertion that no valid obligation exists . . . ."

[5] RPC 8.4(a) and (d) provide: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . (d) engage in conduct that is prejudicial to the administration of justice . . . ."

[6] RPC 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

Mr. Walwyn filed answers to both petitions. With regard to the Lara and Matthews cases, Mr. Walwyn "admitted that [he] ha[d] fallen short on at least some of his obligations under the standards imposed upon members of the bar as conditions for the privilege to practice law" and "that [his] acts and omissions ha[d] violated the Rules of Professional Conduct." However, Mr. Walwyn denied violating "all the Rules of Professional Conduct specified in the [initial] [p]etition for [d]iscipline." With regard to the Hunt case, addressed in the supplemental petition for discipline, Mr. Walwyn denied all the alleged ethical violations.

The disciplinary hearing on both petitions was scheduled for July 10, 2013. In his pretrial brief, filed June 25, 2013, Mr. Walwyn "concede[d] that his conduct [in the Lara and Matthews cases] fell short of his ethical duties with respect to *Rules* 1.3 (Diligence), 1.4 (Communication) and 3.2 (Expediting Litigation)." (Emphasis in original.) He did not dispute that he had "fallen short in his duties under the Rules of Professional Conduct" and agreed that his "past disciplinary history" suggested that suspension would be an appropriate sanction. Nevertheless, Mr. Walwyn urged the Hearing Panel to give weight to the mitigating factors and impose a less severe sanction, such as probation and a practice monitor.

At a July 1, 2013 prehearing conference, the Hearing Panel was advised that Mr. Walwyn had retained attorney Connie Reguli to represent him, in addition to attorney Michael Bligh, and that several of Mr. Walwyn's witnesses were not available to testify on July 10, 2013. On these grounds, Mr. Walwyn's attorneys orally moved for a continuance of the July 10, 2013 hearing, and in an order filed July 3, 2013, the Hearing Panel granted the motion and reset the matter for hearing to August 14, 2013.[7] In addition, the Hearing Panel ordered the parties to file all pretrial motions by July 30, 2013, to file all responses to pretrial motions by August 4, 2013, to file any replies to responses to pretrial motions by August 7, 2013, to conclude depositions of trial witnesses by August 7, 2013, and to provide copies of all trial exhibits to the Hearing Panel and the opposing party by August 9, 2013.

Although the July 3, 2013 order made no provision for additional written discovery, on July 11, 2013, Mr. Walwyn propounded interrogatories and requests for production of documents upon the Board, seeking, among other things, "information on all comparative sanctions that have been imposed against respondent attorneys for the same or similar conduct in the last ten years." Four days later, Mr. Walwyn filed several pleadings with the Hearing Panel, including, as pertinent to this appeal, a motion to shorten the time for responding to his July 11, 2013 discovery requests, a motion for determination of the standard of proof that would be used at the hearing, and an objection on constitutional grounds to the preponderance-of-evidence standard.

---

[7] On this same date, July 3, 2013, Connie Reguli filed a notice of appearance.

On July 18, 2013, the Board moved for a protective order to prohibit Mr. Walwyn's July 11, 2013 discovery requests, arguing that the deadlines for requesting and responding to discovery (May 1 and June 1, 2013) had passed, that both Mr. Walwyn and the Board had already engaged in discovery, and that no further discovery was necessary because the facts were "substantially undisputed" and Mr. Walwyn had "already admitted that he violated 'certain' of the Rules of Professional Conduct as alleged by the Board."

On July 30, 2013, Mr. Walwyn filed a response to the Board's motion for protective order, arguing that interim orders may be modified at any time and that the discovery he sought was reasonable and necessary "to determine compliance with the ABA Attorney Disciplinary Sanctions . . . ." On August 1, 2013, Mr. Walwyn filed a notice of constitutional challenge and defense of constitutional equal protection violations. On August 2, 2013, an order was entered granting Mr. Bligh's motion to withdraw as Mr. Walwyn's attorney of record. On August 5, 2013, the Board filed responses to Mr. Walwyn's motion for determination of standard of proof and his notice of constitutional challenge and defense of constitutional equal protection violations.

On August 14, 2013, the date previously set for the disciplinary hearing, the Hearing Panel entered several orders addressing the various motions that had been filed. As pertinent to this appeal, the Hearing Panel: (1) ruled that no further discovery requests would be permitted without leave of the Hearing Panel; (2) denied Mr. Walwyn's motion to shorten the time for discovery responses; (3) ruled that the preponderance-of-evidence standard would apply at the hearing, in accordance with Rule 9, section 8.2 of the Tennessee Supreme Court Rules; (4) denied in its entirety the notice/motion of constitutional challenge and defense of constitutional equal protection violations; and (5) reserved all other pending motions not expressly resolved. The Hearing Panel also advised that a new scheduling order would be filed within thirty days and would include a date for the hearing.

Six days later, on August 20, 2013, Mr. Walwyn, now represented by Ms. Reguli alone, filed a motion asking the Hearing Panel to reconsider its ruling on his motion for determination of the standard of proof. The Board filed a response on August 26, 2013. The Hearing Panel denied Mr. Walwyn's motion on September 26, 2013, and on October 16, 2013, entered an order scheduling the disciplinary hearing for December 4, 2013.

### B. Proof at the Disciplinary Hearing

At the hearing, the Board called Mr. Walwyn as its only witness and through his testimony offered into evidence several orders the Court of Criminal Appeals had filed in the Lara, Matthews, and Hunt cases, as well as records establishing Mr. Walwyn's prior disciplinary history.

## 1. The Lara Case

The Board's proof established that Mr. Walwyn represented Mr. Cristobal Lara on a criminal charge in the Circuit Court for Williamson County. Following Mr. Lara's conviction, Mr. Walwyn filed a notice of appeal on May 26, 2010. On August 3, 2010, the Court of Criminal Appeals received notice from the trial court clerk that no transcript had been filed. On September 1, 2010, the Court of Criminal Appeals filed an order giving Mr. Walywn twenty days to notify it "about the status" of Mr. Lara's appeal. The Court of Criminal Appeals expressed its willingness to consider a motion seeking permission to late-file the transcript or statement of evidence or a motion for voluntary dismissal of the appeal. The Court of Criminal Appeals stated, that "[i]n either case, counsel shall explain the reason for the delay." The final paragraph of the Court of Criminal Appeals' September 1, 2010 order stated:

> Failure to comply with this order may result in the dismissal of this appeal and/or the filing of a show cause order requiring counsel to appear before a panel of this Court and explain why he should not be held in contempt for failing to comply with the Rules of Appellate Procedure.

The Court of Criminal Appeals directed the Appellate Court Clerk to provide the order to Mr. Walwyn by certified and first class mail. Mr. Walwyn admitted that he received the September 1, 2010 order, but he did not file a status update, or any other motion or response, in the matter.

Despite Mr. Walwyn's inaction, the record was filed in the Court of Criminal Appeals on September 9, 2010. On October 15, 2010, the Appellate Court Clerk mailed Mr. Walwyn a notice advising him of his failure to file a brief within thirty days of the filing of the record. Mr. Walwyn did not respond to this notice. On December 3, 2010, the Court of Criminal Appeals filed an order giving Mr. Walwyn "twenty days to respond" and stating that Mr. Walwyn could either file a motion for voluntary dismissal of the appeal or a motion seeking permission to late-file the brief, explaining why the brief had not been timely filed, and stating whether the State opposed the motion. The Court of Criminal Appeals cautioned that a request for additional time would not be "entertained unless counsel demonstrated the existence of exigent circumstances beyond his control" and noted that "[g]eneral statements that counsel ha[d] been busy with other matters" would not constitute exigent circumstances. The final paragraph of the December 3, 2010 order was identical to the final paragraph of the September 1, 2010 order, and again warned Mr. Walwyn that failing to comply could result in dismissal, a show cause order, and/or a contempt finding. Although Mr. Walwyn received the December 3, 2010 order, he again did not comply with it and did not file a status update or motion within the twenty-day deadline established by the court.

More than four months later, on April 18, 2011, Mr. Walwyn filed a motion, on Mr. Lara's behalf, requesting a thirty-day extension of time to file Mr. Lara's appellate brief. As grounds for the motion, Mr. Walwyn asserted that more time was needed "to more thoroughly research and draft" the brief because of his "heavy caseload" and because Mr. Lara had "indicate[d] that he may want to voluntarily dismiss" the appeal and counsel needed "additional time to ensure that [Mr. Lara] understood his rights regarding voluntary dismissal." The Court of Criminal Appeals denied the motion. On June 21, 2011, Mr. Walwyn filed a second motion for extension of time on Mr. Lara's behalf and stated that additional time was needed "to make contact with and get feedback from [Mr. Lara] regarding the potential voluntary dismissal of this matter" and to ensure that Mr. Lara, who was then incarcerated, understood his rights regarding voluntary dismissal, because Mr. Walwyn's prior attempts to contact Mr. Lara had been unsuccessful. By an August 15, 2011 order, the Court of Criminal Appeals granted Mr. Walwyn twenty days to file either an appellate brief or a motion for voluntary dismissal, accompanied by Mr. Lara's signed waiver. This time, the Court of Criminal Appeals notified Mr. Walwyn that his "failure to file the appropriate document [would] result in the prejudicial dismissal of [Mr. Lara's] appeal and the issuance of a show cause order" to counsel. Mr. Walwyn again failed to respond to the Court of Criminal Appeals' order in the time permitted.

Rather than dismiss the appeal, on January 20, 2012, the Court of Criminal Appeals issued a show cause order directing Mr. Walwyn to appear on February 22, 2012, and show why he should not be held in contempt of court. On the day of the hearing, February 22, 2012, Mr. Walwyn filed a notice of voluntary dismissal, signed by Mr. Lara, and he also appeared before the Court of Criminal Appeals, as ordered. By a February 24, 2012 order, the Court of Criminal Appeals held Mr. Walwyn in contempt and sentenced him to two days in the Davidson County Jail. Mr. Walwyn subsequently filed a petition for rehearing of the contempt finding, which the Court of Criminal Appeals denied. Mr. Walwyn then filed an application for permission to appeal, which this Court denied on May 16, 2012. Following the denial of his Tennessee Rule of Appellate Procedure 11 application, Mr. Walwyn reported to the Davidson County Jail and served his sentence.

At the disciplinary hearing, Mr. Walwyn explained that he had filed the appeal to preserve Mr. Lara's rights but had been unable to communicate with Mr. Lara after the sentencing hearing. On the day before the show cause hearing, Mr. Walwyn had met with Mr. Lara and received permission to dismiss the appeal. By then, Mr. Lara had been jailed for twenty-one months since the notice of appeal was filed, had served enough time to be released on parole, and had agreed to dismiss the appeal. Mr. Walwyn admitted receiving all the orders and notices that were mailed to him and also admitted that he had failed to file a brief or any other appropriate pleading as ordered.

On cross-examination by his attorney, Mr. Walwyn stated that, when he asked Mr. Lara immediately after the sentencing hearing if he wanted to appeal, Mr. Lara was unsure and asked Mr. Walwyn to speak with his wife. Although Mr. Walwyn had tried to speak with Mr. Lara's wife, he had been unable to reach her, so he decided to file the notice of appeal and pay the filing fee out of his own pocket. After receiving the Court of Criminal Appeals' order directing him either to file a brief or a motion to dismiss the appeal, Mr. Walwyn stated that he had attempted several times without success to locate Mr. Lara within the prison system. Mr. Walwyn claimed that he had interpreted the Court of Criminal Appeals' orders as meaning that the appeal would be dismissed if he took no action. After receiving the Court of Criminal Appeals' show cause order, Mr. Walwyn located Mr. Lara within the prison system, met with him, and obtained Mr. Lara's permission to dismiss the appeal voluntarily. Mr. Walwyn filed the motion for voluntary dismissal on the same day as he appeared for the show cause hearing before the Court of Criminal Appeals. Mr. Walwyn also stated in response to his attorney's questions that he had been dealing with his father's serious health problems at the time of the Lara case, that he had spent long periods of time at the hospital caring for his father, and that his practice had been undergoing some office staffing issues at that time as well.

## 2. *The Matthews case*

With regard to the Matthews case, the Board's proof showed that Mr. Walwyn represented Mr. Deonte Alesio Matthews in the Criminal Court for Davidson County. Following his client's conviction, Mr. Walwyn represented Mr. Matthews on appeal to the Court of Criminal Appeals. Mr. Walwyn failed to file the notice of appeal timely, but he subsequently filed a motion requesting a waiver of the requirement of a timely filed notice of appeal, and the Court of Criminal Appeals granted his motion. Thereafter, on April 12, 2010, Mr. Walwyn filed a notice of appeal in the Matthews case.

On August 10, 2010, the Appellate Court Clerk received notice from the trial court clerk that no transcript had been filed. By an October 5, 2010 order, the Court of Criminal Appeals gave Mr. Walwyn twenty days to notify it of the status of the appeal, stated that Mr. Walwyn could file a motion for permission to late-file the transcript or statement of evidence or a motion for voluntary dismissal, but emphasized that, "[i]n either case, counsel shall explain the reason for the delay." The final paragraph of the October 5, 2010 order was identical to the final paragraph of orders the Court of Criminal Appeals had entered in the Lara case, and notified Mr. Walwyn that his failure to comply could result in dismissal of the appeal and/or a show cause order and finding of contempt. On October 11, 2010, after receiving a copy of the October 5, 2010 order, Mr. Walwyn filed a motion in his capacity as court-appointed counsel for Mr. Matthews requesting additional time to file the transcript. On October 18, 2010, after noting that his motion was unopposed, the Court of Criminal Appeals granted the motion, and extended the time for filing the transcript until November 12, 2010.

On January 6, 2011, almost two months after the deadline, the Court of Criminal Appeals received another notice from the trial court clerk stating that the transcript still had not been filed. By a February 2, 2011 order, the Court of Criminal Appeals gave Mr. Walwyn twenty days to notify it of the status of the appeal and to explain why he had not contacted the Court of Criminal Appeals when the transcript was not filed by the November 12, 2010 deadline. The text of the final paragraph of the February 2, 2011 order was underscored but otherwise identical to that of the earlier Court of Criminal Appeals orders, so it warned Mr. Walwyn that his failure to comply could result in dismissal of the appeal and/or a show cause order and contempt finding. Mr. Walwyn again failed to respond timely. Instead, on April 18, 2011, almost two months after the deadline, Mr. Walwyn filed a motion, as Mr. Matthews' court-appointed attorney, requesting an additional thirty days to file the transcript. The Court of Criminal Appeals granted the motion in part, "[d]espite counsel's seemingly inexcusable neglect in filing the transcript of evidence," and allowed fifteen additional days to file the transcript.

The Appellate Court Clerk did not receive and file the record until five months later on September 12, 2011. On October 20, 2011, the Appellate Court Clerk mailed Mr. Walwyn a notice that he had failed to timely file a brief. Mr. Walwyn failed to respond to the notice. By a November 21, 2011 order, the Court of Criminal Appeals gave Mr. Walwyn twenty days to notify it of the status of the appeal and stated that Mr. Walwyn could file either a motion for voluntary dismissal or a brief on Mr. Matthews' behalf, along with a motion to late-file the brief, which explained the delay and stated whether there was any opposition to the motion. The intermediate appellate court stated that a request for additional time would not be entertained unless Mr. Walwyn demonstrated exigent circumstances beyond his control, which could not be satisfied by stating that he had been busy with other matters. The Court of Criminal Appeals again warned Mr. Walwyn that noncompliance could result in dismissal of the appeal and/or a show cause order and a finding of contempt. Mr. Walwyn admitted that he had received the November 21, 2011 order, but he did not file a status report, brief, or a motion to dismiss by the deadline it established.

Therefore, on January 20, 2012 (the same day the show cause order was filed in the Lara appeal), the Court of Criminal Appeals filed a show cause order in the Matthews appeal, directing Mr. Walwyn to appear on February 22, 2012, and to show cause why he should not be held in contempt. On February 21, 2012, Mr. Walwyn filed a brief on Mr. Matthews' behalf.

The next day, February 22, 2012, Mr. Walwyn appeared before the Court of Criminal Appeals in response to the show cause orders entered in the Lara and Matthews cases. On February 24, 2012, the Court of Criminal Appeals entered an order holding Mr. Walwyn in contempt of court and sentencing him to two days in the Davidson County Jail, to be served concurrently with the two-day sentence imposed in the Lara case. The

Court of Criminal Appeals denied Mr. Walwyn's petition for rehearing, and this Court subsequently denied his application for permission to appeal. Mr. Walwyn then reported to the Davidson County Jail and served his concurrent two-day sentences.

On cross-examination at the disciplinary hearing, Mr. Walwyn testified that, although he had received all of the Court of Criminal Appeals' orders in the Matthews case, he had ongoing difficulties getting the court reporter to complete the transcript, despite contacting her several times and asking when she would finish it. He also reiterated that the events in the Matthews case, like those in the Lara case, occurred at the same time he was dealing with his father's serious health problems.

### 3. The Hunt Case

Mr. Walwyn represented Mr. James Tremelle Hunt in a trial in the Criminal Court for Davidson County. On November 17, 2010, a jury convicted Mr. Hunt, and the trial court held a sentencing hearing in late January 2011. On February 2, 2011, Mr. Walwyn filed a motion for new trial, and on March 14, 2011, he amended the motion and also requested additional time to locate certain telephone records and a witness. On April 20, 2011, Mr. Walwyn informed the trial judge that he had been unable to locate the additional records and the witness. On April 25, 2011, the trial court filed an order denying the motion for new trial. Mr. Walwyn did not file a notice of appeal.

In October 2011, Mr. Hunt began sending letters to the Consumer Assistance Program of the Board ("CAP") complaining that Mr. Walwyn was not communicating with him about the status of his appeal. In a December 1, 2011 letter to CAP introduced into evidence at the disciplinary hearing, Mr. Walwyn admitted that he had not filed a notice of appeal for Mr. Hunt and explained that it was his "clerical error" that had "thrown off" the "timing of the appeal." Mr. Walwyn stated: "[A]t this time, a Motion to Accept a Late Filed Appeal is going to be filed and an appeal to follow." However, Mr. Walwyn did not actually file the motion requesting permission to waive the timely filing of the notice of appeal until April 17, 2012, more than four months after his letter assuring CAP it would be filed.

On May 10, 2012, the Court of Criminal Appeals denied the motion, explaining that, although Mr. Walwyn had admitted "that he neglected to timely file the notice of appeal on behalf of his client," he had failed "[to] offer any other explanation for his failure to contact this Court until this late of a date" and had failed "to provide this Court with sufficient information about the case for an adequate determination of whether a waiver [of the thirty-day period for filing the notice of appeal] is appropriate."

After the Court of Criminal Appeals denied Mr. Walwyn's motion, Mr. Hunt obtained new counsel, and on April 10, 2013, filed a motion in the trial court requesting a delayed appeal. By an order filed July 3, 2013, the trial court found that Mr. Hunt had been deprived of his right to file an appeal by Mr. Walwyn's neglect, granted Mr. Hunt a delayed appeal, and stayed Mr. Hunt's post-conviction proceedings pending the outcome of the delayed appeal.

On cross-examination during the disciplinary hearing, Mr. Walwyn explained that, after the trial court denied Mr. Hunt's motion for new trial, Mr. Hunt's family indicated that they were going to retain another attorney to handle Mr. Hunt's appeal and that they already had spoken with several attorneys. Mr. Walwyn testified that he had intended to follow up with the family and make sure another attorney would be filing the notice of appeal, but due to a clerical error, he was never reminded to follow up and simply failed to do so. Mr. Walwyn stated that, when he received the letter from CAP, he contacted the trial court clerk and learned that no other attorney had entered an appearance or initiated an appeal on Mr. Hunt's behalf, so he wrote to CAP and stated that a motion would be filed requesting permission to late-file Mr. Hunt's appeal. After the Court of Criminal Appeals entered the May 10, 2012 order denying Mr. Walwyn's motion requesting permission to waive the timely filing of Mr. Hunt's notice of appeal, Mr. Hunt was appointed new counsel, and he obtained a delayed appeal on July 3, 2013. At some point after new counsel was appointed, Mr. Walwyn met with her and offered to give her any information she might need for the delayed appeal.

The Board also entered into evidence Mr. Walwyn's prior disciplinary history, which included a July 22, 2004 public censure for, in part, failing to timely file a notice of appeal and for filing a brief sixty days late, despite an order from the Court of Criminal Appeals requiring it to be filed earlier, and a July 19, 2006 public censure for failing to respond to the Board in a timely manner. The Board also introduced two exhibits evidencing private disciplinary action against Mr. Walwyn, and these exhibits were placed under a protective order. Following the introduction of these exhibits, the Board rested its case.

### 4. Mr. Walwyn's proof

Mr. Walwyn called a number of attorneys and judges to testify as character witnesses on his behalf, including Davidson County General Sessions Court Judge Bill Higgins, Assistant District Attorney General Amy Hunter, Davidson County Criminal Court Judge Mark Fishburn, Davidson County General Sessions Judge Gale Robinson, and Stanley Davis, a Nashville attorney and longtime friend of Mr. Walwyn. Each of these witnesses testified that Mr. Walwyn is a competent attorney who cares about his clients, that he is a person of good character, that he is well regarded by trial judges,

prosecutors, and other members of the legal community, and that he is an asset to the legal community.

Mr. Walwyn also called attorney John Webb as a witness. Mr. Webb shared office space at Mr. Walwyn's law firm, and he testified that Mr. Walwyn approached him at some point after "it became clear that an appeal had not been filed" and asked if Mr. Webb would file a motion seeking appointment to Mr. Hunt's appeal. Mr. Walwyn and Mr. Webb collaborated, and Mr. Webb filed a motion asking to be appointed to the Hunt appeal. However, by the time the motion was heard, Mr. Walwyn and Mr. Webb had discussed the matter and "decided that it probably wasn't the best practice for [Mr. Webb] specifically . . . to enter as counsel for Mr. Hunt given [his] relationship with Mr. Walwyn." According to Mr. Webb, this conversation occurred in February 2013. Therefore, at the subsequent hearing on the motion, Mr. Webb requested the Court to appoint another attorney to represent Mr. Hunt, and the Court granted the request. Mr. Hunt's newly appointed counsel filed a motion in April 2013, seeking a delayed appeal on Mr. Hunt's behalf, and the trial court granted Mr. Hunt a delayed appeal on July 3, 2013.

### 5. *The Hearing Panel's Ruling*

On December 16, 2013, the Hearing Panel issued its written judgment. Regarding the Lara case, the Hearing Panel found that Mr. Walwyn had violated RPCs 1.3, 3.2, 8.4(a), and 8.4(d); the Hearing Panel found, however, that RPC 3.4(c) did not apply to Mr. Walwyn's actions in the Lara case. Regarding the Matthews case, the Hearing Panel found that Mr. Walwyn had violated RPCs 1.3 and 8.4(a) and (d). The Hearing Panel found that the Board had failed to meet its burden of proof regarding the alleged violation of RPC 3.2 and also concluded that RPC 3.4(c) did not apply. Regarding the Hunt case, the Hearing Panel found that Mr. Walwyn had violated RPC 1.3, that Mr. Walwyn had correctly acknowledged violating RPC 1.4 in his trial brief, and that he had violated RPC 8.4(a) and (d). With respect to the Lara case, the Hearing Panel found that Mr. Walwyn had "knowingly failed to obey a court order on multiple occasions, and his actions were disrespectful for the law that is prejudicial to the administration of justice." Similarly, with respect to the Matthews case, the Hearing Panel found that he had "knowingly failed to obey court orders, and his actions were disrespectful for the law that is prejudicial to the administration of justice."

Pursuant to section 8.4 of Tennessee Supreme Court Rule 9 and Standards 4.42, 7.2, and 8.2 of the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"),[8] the Hearing Panel issued the following ruling regarding sanctions for Mr. Walwyn:

> After considering the actions of [Mr. Walwyn], the aggravating and mitigating factors, the entire record and testimony in this case, it is the opinion of this Hearing Panel that [Mr. Walwyn] shall be suspended from the practice of law for a period of six (6) months. Pursuant to Rule 9, Section 8.5, five (5) months of th[e] suspension ordered herein shall be suspended in conjunction with a five-month period of probation. In other words, after thirty (30) days of suspension, Mr. Walwyn may begin practicing under a probationary period of time for five (5) months. During that probationary period of time, Mr. Walwyn is required to have a practice monitor.

The Panel also specified the duties and responsibilities of the practice monitor and ordered Mr. Walwyn to complete six additional hours of continuing legal education on the subject of client relations, the management of a law practice, and/or the Rules of Professional Conduct.

---

[8] These ABA Standards state:

> 4.42 Suspension is generally appropriate when:
>
> > (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
> >
> > (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.
>
> 7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.
>
> 8.2 Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

### 6. Mr. Walwyn's Appeal to the Trial Court

Mr. Walwyn sought review of the Hearing Panel's decision by timely filing a petition for writ of certiorari in the Circuit Court for Davidson County, and Senior Judge Don Ash was designated to hear the appeal. Tenn. Sup. Ct. R. 9, § 1.3.[9] Mr. Walwyn presented the following issues for review by the trial court:

(a) The Hearing Panel acted arbitrarily by refusing to define the ethical duty [Mr. Walwyn] owed his clients prior to finding there was a violation.

(b) The Hearing Panel abused its discretion by relying on an order of the Court of Criminal Appeals.

(c) The Hearing Panel either acted arbitrarily or abused its discretion by refusing to compel the Board of Professional Responsibility to provide comparative sanctions.

(d) The Hearing Panel either acted arbitrarily or abused its discretion by, when applying sanctions, failing to make specific findings of (1) a knowing failure to perform services (duties); (2) a pattern of neglect; and (3) injury or potential injury.

(e) The Hearing Panel either acted arbitrarily or abused its discretion in failing to mitigate, given [Mr. Walwyn's] major life events at the time of the violations.

(f) The Hearing Panel is an unconstitutionally constituted body, and its decisions are void. The Tennessee attorney disciplinary system is unconstitutionally constituted and therefore its actions should be stricken.

After the trial court rejected each of Mr. Walwyn's contentions and affirmed the Hearing Panel by an order filed on February 27, 2015, Mr. Walwyn timely appealed to this Court. Tenn. Sup. Ct. R. 9, § 1.3.

---

[9] Under the pre-2014 version of Rule 9, either party had the right to have the trial court review the Hearing Panel's judgment "in the manner provided by [Tennessee Code Annotated section] 27-9-101 et seq., except as otherwise provided [in Rule 9]." Tenn. Sup. Ct. R. 9, § 1.3.

## II. Standard of Review

As part of our inherent duty to regulate the practice of law in Tennessee, this Court bears the ultimate responsibility for sanctioning attorneys who violate ethical rules. Bd. of Prof'l Responsibility v. Cowan, 388 S.W.3d 264, 267 (Tenn. 2012). To fulfill this responsibility, we have established a system where attorneys formally charged with disciplinary violations have a right to an evidentiary hearing before a hearing panel. Id. (citing Tenn. Sup. Ct. R. 9, § 8.2). A lawyer dissatisfied with a hearing panel's decision may prosecute an appeal to the circuit or chancery court and then directly to this Court, where our review is upon the transcript of the record from the trial court, including the record of the evidence presented to the hearing panel. Tenn. Sup. Ct. R. 9, § 1.3. We apply the same standard of review as that applied by a trial court and will not disturb the hearing panel's decision unless

> the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Id.; see also Cowan, 388 S.W.3d at 267. We review questions of law de novo but do not substitute our judgment for that of the hearing panel as to the weight of the evidence on questions of fact. Cowan, 388 S.W.3d at 267. These principles guide our review of the issues Mr. Walwyn has raised in this appeal.

## III. Analysis

Mr. Walwyn raises four issues for review before this Court:

(1) The [H]earing [P]anel acted arbitrarily when it refused to define the ethical duty Attorney Walwyn had to his clients prior to making a finding of a violation. Further, a reliance on the Court of Criminal Appeals . . . order in making a finding against [Mr. Walwyn] was an abuse of discretion as it was not res judicata to the [Hearing] [P]anel[;]

(2) The [Hearing] [P]anel acted arbitrarily or abused its discretion in refusing to compel the Board to provide comparative sanctions[;]

(3) In the application of sanctions, the [H]earing [P]anel acted arbitrarily or abused its discretion by failing to make specific findings of (1) a knowing failure to perform services; (2) a pattern of neglect; and (3) injury or potential injury. Further, the [Hearing] [P]anel acted arbitrarily or abused its discretion in failing to mitigate given the major life events for [Mr. Walwyn][;]

(4) The Tennessee attorney disciplinary system is unconstitutionally constituted and therefore its actions should be stricken by this Court.

We will address each issue in turn.

### A. Failure to Define Mr. Walwyn's Ethical Duty

Mr. Walwyn first asserts that the Hearing Panel failed to define the ethical duties he owed to each of his three clients prior to determining that his conduct violated an ethical duty. Mr. Walwyn further asserts that, with respect to the Hunt and Lara cases, his ethical duty "never vested" because neither Mr. Lara nor Mr. Hunt directed him to file an appeal.[10] Finally, Mr. Walwyn argues that the Hearing Panel erroneously relied on the Court of Criminal Appeals' contempt orders.

The Board responds that Mr. Walwyn owed an ethical duty to his clients and to the legal system and that there is ample evidence in the record to establish Mr. Walwyn's continued representation of all three clients in the appellate process. With regard to the Court of Criminal Appeals' contempt orders, the Board points out that Mr. Walwyn did not object to their admission into evidence and that, in any event, the Hearing Panel made its own independent finding based upon the evidence introduced at the disciplinary hearing and was not constrained by the Court of Criminal Appeals' orders.

Having reviewed the record under the applicable standard of review, we conclude that Mr. Walwyn's arguments are without merit. The Board's initial and supplemental petitions for discipline specified the Rules of Professional Conduct that Mr. Walwyn allegedly violated in his appellate representation of Mr. Lara, Mr. Matthews, and Mr. Hunt. In rendering judgment, the Hearing Panel made specific findings as to which Rules of Professional Conduct Mr. Walwyn had violated in each case. Thus, the Hearing Panel did not fail to define the ethical duties that Mr. Walwyn owed to his clients.

---

[10] Mr. Walwyn appears to limit this argument solely to the Lara and Hunt cases and does not challenge the existence of his duty in the Matthews case.

Mr. Walwyn's contention that his ethical duty never "vested" in the Lara and Hunt cases is equally without merit and belied by the evidence in the record. Rule of Professional Conduct 1.3 states that "a lawyer shall act with reasonable diligence and promptness in representing a client." Comment four to this Rule provides that, "*Unless otherwise required by law*, whether the lawyer is obligated to prosecute the appeal for the client depends on the scope of the representation the lawyer has agreed to provide to the client." Tenn. Sup. Ct. R. 8, RPC 1.3 cmt. 4 (emphasis added). However, the Tennessee Rules of Criminal Procedure provide additional duties for counsel on appeal. Tennessee Rule of Criminal Procedure 37(e) provides as follows:

> (1) **Counsel Retained for Trial But Not Appeal.** An attorney retained by the defendant to represent the defendant for the trial but not for appeal, shall timely advise the trial court of this fact at the hearing on the motion for a new trial. Thereupon, such counsel will be permitted to withdraw as counsel of record, except as provided in Rule 37(e)(2).
>
>> (A) **Appellate Counsel for Non-Indigent Defendant.** If the defendant is not indigent at the time counsel is permitted to withdraw, the court shall advise the defendant of the right of appeal and the time for filing the notice of appeal.
>>
>> (B) **Appellate Counsel for Indigent Defendant.** If the defendant is indigent at the time counsel is permitted to withdraw, the court shall appoint appellate counsel for the defendant.
>
> (2) **Retained Counsel Filing Notice of Appeal.** Retained counsel— whether or not fully paid—who files a notice of appeal shall represent the defendant on appeal. Such retained counsel shall fully comply with all appellate rules as to timely filing and appearances. Retained counsel shall be allowed to withdraw as counsel of record only for good cause and only if application is made when not delinquent in his or her duties.
>
> (3) **Appointed Counsel for Indigent Defendant.** Pursuant to Tenn. Sup. Ct. Rule 13, § 1(e)(5), counsel appointed in the trial court to represent an indigent defendant shall continue to represent the defendant throughout the proceedings, including any appeals, until the case has been concluded or counsel has been allowed to withdraw by a court.

(Bolding in original.)

Mr. Walwyn filed a notice of appeal in the Lara case, and there is no indication in the record that he filed a subsequent motion to withdraw. Moreover, even if Mr. Walwyn had filed a motion to withdraw, it likely would have been denied, pursuant to Tennessee Rule of Criminal Procedure 37(e)(2), because he was delinquent in his duties as counsel, having failed to comply with multiple Court of Criminal Appeals' orders. Thus, in the Lara case Mr. Walwyn's duty of diligence involved continued representation of Mr. Lara on appeal, which Mr. Walwyn admittedly did not diligently pursue.

Furthermore, Mr. Walwyn's actions in the Lara case belie his current assertions that he did not believe he had a duty to represent Mr. Lara on appeal. Mr. Walwyn admitted receiving multiple orders from the Court of Criminal Appeals regarding his failure to file a transcript or a brief in the Lara case. Instead of responding that he no longer represented Mr. Lara or seeking to withdraw properly from the case, Mr. Walwyn filed two separate motions with the Court of Criminal Appeals, in which he described himself as counsel for Mr. Lara and asked for additional time to file a brief on Mr. Lara's behalf. At no point during the disciplinary hearing did Mr. Walwyn testify that he did not have a duty to act as appellate counsel for Mr. Lara or that he believed he was no longer representing Mr. Lara on appeal. Furthermore, Mr. Walwyn in his answer admitted violating certain Rules of Professional Conduct, and in the pretrial brief he filed before the Hearing Panel, he admitted violating Rules of Professional Conduct 1.3, 1.4, and 3.2 in his representation of Mr. Lara. Implicit in this admission is Mr. Walwyn's recognition that he was acting as Mr. Lara's attorney on appeal.

With respect to the Hunt case, Mr. Walwyn filed a motion for new trial, which was ultimately denied by the trial judge. Notably, Mr. Walwyn did not notify the trial judge at the hearing on the motion for new trial that he would not be representing Mr. Hunt on appeal, as Tennessee Rule of Criminal Procedure 37(e)(1) required him to do if in fact he did not intend to represent Mr. Hunt on appeal. Although Mr. Walwyn testified that Mr. Hunt's family informed him that they were seeking a new attorney to represent Mr. Hunt on appeal, Mr. Walwyn never asked Mr. Hunt's family to sign a disengagement letter. Instead, Mr. Walwyn took no action. He filed neither a notice of appeal nor a motion to withdraw from the case. Inaction, however, did not relieve Mr. Walwyn of his duty to his client under the Rules of Professional Conduct and the Rules of Criminal Procedure.

Moreover, in his complaint to CAP, Mr. Hunt indicated that Mr. Walwyn was still representing him in his appeal and stated that he was unhappy with Mr. Walwyn's representation. In his response to CAP, Mr. Walwyn did not deny representing Mr. Hunt on appeal. Instead, he admitted that he had not filed a notice of appeal for Mr. Hunt, explained that it was his "clerical error" that had "thrown off" the "timing of the appeal," and advised that "a Motion to Accept a Late Filed Appeal is going to be filed and an appeal to follow." Both Mr. Hunt's complaint to CAP and Mr. Walwyn's response

establish that Mr. Walwyn recognized he had a duty to represent Mr. Hunt on appeal at the time of the CAP complaint and thereafter.

Finally, Mr. Walwyn argues that the Hearing Panel failed to determine independently whether Mr. Walwyn had violated the Court of Criminal Appeals' orders. The Hearing Panel's judgment included detailed factual findings as to each of the three complaints. Regarding the Lara and the Matthews cases, the Hearing Panel made its own specific and independent findings that Mr. Walwyn had knowingly violated court orders. The trial court below found that the Hearing Panel had "properly reviewed [the Court of Criminal Appeals' orders] the same as any other evidence presented." The record supports the trial court's conclusion, and Mr. Walwyn's argument is without merit.

### B. Refusal to Compel Disclosure of Comparative Sanctions

Mr. Walwyn next asserts that the Hearing Panel acted arbitrarily or abused its discretion by denying his untimely discovery request for "comparative sanctions that have been imposed against respondent attorneys for the same [or] similar conduct in the last ten years." We disagree.

> The applicable standard of review for pretrial discovery decisions is abuse of discretion. Benton v. Snyder, 825 S.W.2d 409, 416 (Tenn. 1992). An abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008).

West v. Schofield, 460 S.W.3d 113, 120 (Tenn. 2015).

The deadline for discovery requests was May 1, 2013, and the deadline for discovery responses was June 1, 2013. Although the Hearing Panel granted Mr. Walwyn a continuance of the July 10, 2013 hearing date and set additional scheduling deadlines for deposing witnesses, the Hearing Panel did not extend the expired deadlines for requesting and answering written discovery. Given the untimeliness of Mr. Walwyn's second discovery request and his failure to provide any explanation for why he had not propounded his discovery request before the deadlines expired, we conclude that the Hearing Panel did not abuse its discretion in denying the request.

Furthermore, comparative public discipline in Tennessee was at all times accessible to Mr. Walwyn through the published decisions of this Court and through the public informational releases available on the Board's website. The Hearing Panel's appropriate denial of his untimely discovery request did not prevent Mr. Walwyn from using traditional legal research techniques to locate comparable discipline through these publicly available sources.

## C. Appropriateness of the Sanction

Mr. Walwyn asserts that the sanction the Hearing Panel imposed is arbitrary and capricious because the Hearing Panel improperly relied upon ABA Standards 4.42, 7.2, and 8.2. The trial court concluded that the Hearing Panel improperly relied upon ABA Standard 7.2 in determining the appropriate sanctions, and the Board does not challenge the trial court's conclusion on appeal. Therefore, we decline to address Mr. Walwyn's arguments regarding the applicability of ABA Standard 7.2. With respect to ABA Standard 4.42, Mr. Walwyn asserts that the Board presented no evidence of injury or potential injury. Mr. Walwyn also argues that the Board failed to prove that he "knowingly" failed to comply with the Court of Criminal Appeals' orders, as the term is defined in the ABA Standards. Additionally, he argues that the Hearing Panel failed to give sufficient weight to the mitigating factors he presented when determining the appropriate sanction. The Board responds that the sanctions Mr. Walwyn received are appropriate under the applicable ABA Standards.

A hearing panel must consider the applicable provisions of the ABA Standards when imposing discipline. Tenn. Sup. Ct. R. 9, § 8.4; see also Sneed v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 617 (Tenn. 2010). ABA Standard 3.0 establishes four factors to consider regarding the severity of a sanction: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." See also Sneed, 301 S.W.3d at 617.

ABA Standard 4.42 provides that suspension is generally appropriate when: "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to the client, or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." The ABA Standards define "injury" as "harm to a client, the public, the legal system or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to injury alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

Although Mr. Walwyn admitted in his pretrial brief before the Hearing Panel that his "past disciplinary history" suggested that suspension would be an appropriate sanction under the ABA Standards, he now asserts that the sanction was inconsistent with the ABA Standards because the Board failed to show that his conduct caused injury or potential injury. Primarily, Mr. Walwyn points to the fact that the Board did not call any of Mr. Walwyn's clients as witnesses at his disciplinary hearing. Further, Mr. Walwyn points out that Mr. Lara eventually voluntarily dismissed his appeal, because he was soon to be released on parole, and Mr. Hunt eventually received a delayed appeal through post-conviction proceedings.

Despite Mr. Walwyn's assertions to the contrary, the record contains ample evidence of injury or potential injury as those terms are defined in the ABA Standards. Mr. Walwyn's conduct in all three cases caused potential injury to his clients. In the Lara and Matthews cases, Mr. Walwyn admitted receiving multiple orders requesting status updates and establishing filing deadlines. Mr. Walwyn ignored each and every order. At the time Mr. Walwyn received these orders and decided to take no action, it was reasonably foreseeable that Mr. Lara's and Mr. Matthews' appeals were in jeopardy. Mr. Walwyn's failure to meet the filing deadlines could easily have resulted in dismissal of their appeals. Mr. Lara decided to voluntarily dismiss his appeal only because he had been jailed for twenty-one months since the notice of appeal was filed and had served enough time to be released on parole. Likewise, in Mr. Hunt's case, Mr. Walwyn's failure even to file a notice of appeal for many months after Mr. Hunt's conviction jeopardized Mr. Hunt's ability to pursue an appeal. Mr. Hunt received a delayed appeal only after complaining to CAP, obtaining new counsel, and prevailing in the trial court on his post-conviction claim for a delayed appeal.

Moreover, Mr. Walwyn's actions caused both injury and potential injury to the legal system. The Court of Criminal Appeals was forced to expend time and resources monitoring these three cases and issuing multiple orders that sought to compel Mr. Walwyn to fulfill his ethical and legal obligations to his clients. Mr. Walwyn received these orders, yet did not respond and did nothing to remedy the situations. See Tenn. Sup. Ct. R. 8, RPC 8.4 cmt. 9 ("Normally, a lawyer who knowingly fails to obey a court order demonstrates disrespect for the law that is prejudicial to the administration of justice."); Tenn. R. Crim. P. 37(e).

Mr. Walwyn next asserts that he did not "knowingly" fail to comply with the orders of the Court of Criminal Appeals, citing his failure to understand the orders themselves and his belief that if he took no action these appeals would simply be dismissed. The ABA Standards define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." Each order of the Court of Criminal Appeals contained clear language that required Mr. Walwyn to take some action by a specified

deadline. Each order contained clear language warning Mr. Walwyn of the consequences of failing to comply. Mr. Walwyn admitted receiving each and every Court of Criminal Appeals' order. Thus, his attempt now to deny knowledge that the orders required action on his part is dubious at best.

Turning to ABA Standard 8.2, Mr. Walwyn contends that this Standard is inapplicable because it only applies to misconduct that is a direct result of the violation of a prior disciplinary order. This argument is without merit as it is based on an inaccurate interpretation of the ABA Standards. While it is true that the introduction to Standard 8.0 states that "[s]evere sanctions should be imposed on lawyers who violate the terms of prior disciplinary orders," these are not the only situations in which to consider prior disciplinary orders. For example, ABA Standard 8.1(b) states that disbarment is appropriate when a lawyer has been suspended "for the same or similar misconduct, and intentionally or knowingly engages in further similar acts of misconduct . . . ."

Likewise, ABA Standard 8.2 states that "[s]uspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system or the profession." Mr. Walwyn had already received a public censure in 2004 for conduct nearly identical to the conduct in this case for which he has been suspended. Thus, the Hearing Panel did not act arbitrarily or capriciously by applying ABA Standard 8.2 when determining the appropriate sanction in this case.

Finally, Mr. Walwyn asserts that the Hearing Panel failed to give proper weight to the applicable mitigating factors in his case. In addition to finding that Mr. Walwyn's conduct violated ABA Standards 4.42 and 8.2, under which suspension is the appropriate punishment, the Hearing Panel found the following mitigating factors: (1) absence of a dishonest or selfish motive; (2) personal or emotional problems; (3) full and free disclosure to disciplinary board or cooperative attitude; and (4) character and reputation. Standard 2.3 of the ABA Standards states that a suspension is generally "for a period of time equal to or greater than six months . . . ." Here, however, the Hearing Panel imposed an active suspension of only thirty days and allowed the remaining five months to be served on probation with a practice monitor. In light of Mr. Walwyn's numerous infractions, the Hearing Panel's imposition of a sanction of only thirty days' active suspension reflects the Hearing Panel's consideration of Mr. Walwyn's mitigating circumstances and is neither arbitrary nor capricious nor an abuse of discretion. It is, in fact, a more lenient sanction than could be sustained under the proof in the record.

### D. Constitutionality of the Tennessee Attorney Disciplinary System

Mr. Walwyn finally raises a number of constitutional challenges to Tennessee's attorney discipline system. Although this portion of Mr. Walwyn's brief is rambling and borders on incomprehensible, these challenges may be broken down into two broad categories. First, Mr. Walwyn challenges the constitutionality of using the preponderance-of-evidence standard of proof in attorney disciplinary proceedings, instead of the heightened clear-and-convincing-evidence standard used by the majority of states. Second, Mr. Walwyn raises a number of due process challenges to the disciplinary system. Having reviewed Mr. Walwyn's contentions, we find them to be without merit but will briefly address each issue in turn.

### 1. Preponderance-of-Evidence Standard of Proof

Mr. Walwyn objects to "any adjudication against him upon any standard of proof other than clear and convincing evidence." He further asserts that Tennessee is among a minority of states that utilize the preponderance-of-evidence standard of proof and that this standard violates his due process rights. See Tenn. Sup. Ct. R. 9, § 8.2 (requiring the Board to prove its case by a preponderance of the evidence). Although Mr. Walwyn is correct that the majority of other states utilize the clear-and-convincing standard of proof, use of the preponderance-of-evidence standard did not deprive Mr. Walwyn of his right to due process.

In Santosky v. Kramer, the United States Supreme Court determined that "in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." 455 U.S. 745, 755 (1982). While this Court has not previously considered whether the balancing of those interests in attorney disciplinary proceedings requires adoption of an elevated standard of proof, several other jurisdictions have addressed this issue.

In In re Barach, the United States Court of Appeals considered whether an attorney suspended by the Massachusetts Supreme Judicial Court should receive reciprocal discipline in federal court. 540 F.3d 82, 84 (1st Cir. 2008). Before the federal court, Mr. Barach argued that the preponderance-of-evidence standard of proof used in Massachusetts "rendered the state court proceedings fundamentally unfair, and, thus, violated his due process rights." Id. at 85. In finding that Mr. Barach's due process rights had not been violated, the federal court weighed Mr. Barach's interests and those of the public at large, explaining:

Admittedly, the Due Process Clause applies to disciplinary proceedings. But the Due Process Clause does not demand that a state devise an ideal set of procedures for attorney discipline. It suffices to satisfy due process if a state adopts procedures that collectively ensure the fundamental fairness of the disciplinary proceedings. In other words, the Due Process Clause imposes a floor below which a state cannot descend, not a level of perfection that a state must achieve.

We understand the importance of a lawyer's right to practice law and agree that, once granted, that right cannot be taken away in an arbitrary or capricious manner. Yet the Due Process Clause is flexible, and reasonable minds can differ as to the need for elevated levels of proof in particular situations. Viewed in this light, the use of a preponderance of the evidence standard in bar disciplinary proceedings does not offend due process. After all, many types of important property rights typically rest, in contested proceedings, on proof by preponderant evidence. Moreover, other jurisdictions besides Massachusetts use a preponderance standard in attorney disciplinary matters. Although there is something to be said on policy grounds for requiring a more sturdy quantum of proof, the use of a preponderance standard is not so arbitrary or irrational as to render state disciplinary proceedings that use it fundamentally unfair.

Id. at 85-86 (internal citations omitted); see also Disciplinary Matter Involving Walton, 676 P.2d 1078, 1085 (Alaska 1983) ("Under all of these circumstances, we are unwilling to hold that the risk of an incorrect factual determination in a bar disciplinary proceeding should be placed primarily on the public. Because there are substantial interest[s] on both sides, the risk of error should be borne equally. That is accomplished by use of the preponderance of the evidence standard. Due process demands no more." (footnote omitted)); Ligon v. Newman, 231 S.W.3d 662, 667 (Ark. 2006) (upholding the preponderance-of-evidence standard and rejecting the lawyer's assertion that the appropriate standard of proof should be clear-and-convincing evidence); In re McDonald, 162 S.W. 566, 567 (Ky. 1914) (upholding the preponderance-of-evidence standard and rejecting the lawyer's assertion that the standard should be proof beyond a reasonable doubt); In re Posler, 213 N.W.2d 133, 133-34 (Mich. 1973) (explaining that the preponderance-of-evidence standard has applied since March 1, 1970); In re Howard, 912 S.W.2d 61, 63 (Mo. 1995) (observing that the preponderance-of-evidence standard applies in disciplinary proceedings); Curtis v. Comm'n for Lawyer Discipline, 20 S.W.3d 227, 230 n.1 (Tex. App. 2000) (recognizing that preponderance-of-evidence, not clear-and-convincing evidence, is the burden of proof in an attorney disciplinary proceeding).

The reasoning of In re Barach is persuasive. We are mindful that attorneys are entitled to procedural due process and have an interest in avoiding suspension of their law licenses by which they earn their livelihood. Moncier v. Bd. of Prof'l Responsibility, 406 S.W.3d 139, 156 (Tenn. 2013). However, we are equally mindful of the rights of Mr. Walwyn's clients and the public at large to ethical and diligent representation from lawyers licensed to practice in this state. This, too, is a weighty interest that must be protected.[11] Weighing these interests, we conclude, as other courts addressing the appropriate standard of proof have concluded, that use of the preponderance-of-evidence standard satisfies Mr. Walwyn's right to procedural due process.[12]

### 2. Other Due Process Issues

Relying on In re Ruffalo, 390 U.S. 544 (1968), Mr. Walwyn asserts that the attorney disciplinary process is "quasi-criminal" in nature, and therefore, he is entitled to the same due process rights afforded criminal defendants. We addressed and rejected this argument in Moncier, 406 S.W.3d at 156, explaining that, "[r]ead as a whole, In re Ruffalo stands for the proposition that a lawyer subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." Id. We concluded in Moncier that "Tennessee's disciplinary process affords lawyers notice and an opportunity to be heard, as well as other protections, including the right to have counsel present, the opportunity to cross-examine witnesses, and the right to present evidence." 406 S.W.3d at 156. We reaffirm our holding in Moncier that the Tennessee attorney disciplinary system comports with due process.

Mr. Walwyn next asserts that Tennessee's attorney disciplinary process improperly combines investigative and adjudicatory functions. This argument has also been thoroughly considered and rejected in prior decisions. In Moncier, we considered and rejected the contention that hearing panel members are biased and must recuse themselves because of the combination of investigative and adjudicative functions of the Board. 406 S.W.3d at 161. We reaffirmed this holding in Long v. Board of Professional Responsibility of the Supreme Court of Tennessee, 435 S.W.3d 174, 186 (Tenn. 2014), explaining that, "[a]ttorney disciplinary proceedings are not criminal proceedings, and to

---

[11] We note that disciplinary proceedings against medical licensees in Tennessee are conducted in accordance with the Uniform Administrative Procedures Act ("UAPA"). See Tenn. Code Ann. § 63-6-216. The standard of proof in such proceedings is "substantial and material [evidence] in light of the entire record." Tenn. Code Ann. § 4-5-322(h)(5)(A). This standard has been described as "something less than a preponderance of the evidence but more than a scintilla or a glimmer." Ware v. Greene, 984 S.W.2d 610, 614 (Tenn. Ct. App. 1998); see also McEwen v. Tenn. Dep't of Safety, 173 S.W.3d 815, 821 n.10 (Tenn. Ct. App. 2005) (noting that the "preponderance of the evidence" standard is harder to satisfy than the "substantial and material evidence" standard).

[12] Even if the clear-and-convincing standard applied, the overwhelming proof contained in the record on appeal would have satisfied that standard.

prove a risk of bias that would give rise to a due process violation, a litigant must point to more than a simple combination of functions within the Board."

Mr. Walwyn also asserts that "the interrelated functions of the [B]oard and [D]isciplinary [C]ounsel related to the receipt and disbursement of funds creates an intolerable financial incentive within this adjudicatory system." Additionally, he contends that "[t]he functionality of the Board and Disciplinary Counsel is compensated only when the petition approved by the Board and prosecuted by Disciplinary Counsel is sustained." In Long, we recognized that Hearing Panel members "receive no compensation, other than reimbursement for travel expenses, for sitting as the adjudicatory body in a disciplinary matter." 435 S.W.3d at 188. Since reimbursement of travel expenses is afforded, regardless of the outcome of the disciplinary proceeding, it appears the real "financial incentive" to which Mr. Walwyn refers is the assessment of costs against attorneys who are adjudged to have violated ethical rules. Tenn. Sup. Ct. R. 9, § 24.3. Again, we upheld the constitutionality of this system of assessing costs in Moncier, explaining:

> The attorney disciplinary process is a costly endeavor. A large portion of the registration fees paid by attorneys who strive each day to follow ethical guidelines is now used to pay for the disciplinary mechanism necessary to police those attorneys who do not comply with the Rules of Professional Conduct. Shifting the financial burden of formal disciplinary proceedings to those directly responsible for the costs is equitable and "serves the additional function of deterring other lawyers from engaging in unprofessional conduct." In re Shannon, 876 P.2d 548, 575 (Ariz. 1994).

406 S.W.3d at 150.

Finally, Mr. Walwyn submitted as supplemental authority North Carolina Board of Dental Examiners v. F.T.C., _____ U.S. _____, 135 S. Ct. 1101 (2015). Although this supplemental authority is purportedly provided "in support of [Mr. Walwyn's] challenge of [the] unconstitutional and anti-trust nature of the Tennessee disciplinary system[,]" Mr. Walwyn did not allege any antitrust violation in any of the proceedings below. Thus, one of the arguments to which the supplemental authority purportedly relates was not raised below and is waived. See Powell v. Cmty. Health Sys., Inc., 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court."). Additionally, the supplemental authority provides no support for Mr. Walwyn's constitutional claims because it does not address any issue regarding the constitutionality of professional disciplinary processes.

## IV. Conclusion

For the reasons stated herein, we affirm the judgment of the trial court, which upheld the Hearing Panel's judgment. Costs of this appeal are taxed to Paul J. Walwyn, for which execution, if necessary, may issue.

_____
CORNELIA A. CLARK, JUSTICE