# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
November 2, 2016 Session in Jackson

## PETER M. NAPOLITANO v. BOARD OF PROFESSIONAL RESPONSIBILITY

**Montgomery Circuit, No. CC-15-CV-159**
**Ben H. Cantrell, Special Judge**
**BPR Docket No. 2013-2272-6-AW**

_____

**No. M2016-00869-SC-R3-BP – Filed May 24, 2017**

_____

This matter initially originated from a fee dispute between attorney Peter M. Napolitano ("Attorney") and his client Gayle Connelly ("Client"). Client filed a complaint with the Tennessee Board of Professional Responsibility ("the Board") regarding the fee dispute in 2008. The Board dismissed this complaint in 2010 without imposing any sanctions. Client sued Attorney over the fee dispute and, after Attorney was deposed in conjunction with the lawsuit, Client filed a second complaint with the Board in 2012. This second complaint alleged that Attorney had mishandled funds in his trust account and lied under oath. The Board prosecuted this second complaint, resulting in a hearing before a hearing panel ("the Panel"). The Panel determined that Attorney had committed ethical violations related to his trust account and by lying under oath. Accordingly, the Panel imposed sanctions against Attorney, including a five-year suspension of Attorney's law license, with one year of active suspension. Attorney and the Board both sought review in circuit court. The circuit court modified the Panel's sanctions in part but affirmed the five-year suspension.[1] Both Attorney and the Board sought review by this Court, with Attorney seeking a lesser punishment and the Board seeking disbarment. Additionally, both parties disagree with the Panel's order of $7,500 in restitution to Client. We hold that the five-year suspension is appropriate and that the Panel did not err in ordering $7,500 in restitution. Accordingly, we affirm the circuit court's judgment but modify it by adding the requirement of a practice monitor during Attorney's probationary period.

_____

[1] The circuit court affirmed the Panel's determinations that Attorney be suspended for five years, probated after one year of active suspension; that he serve 400 hours of public service as a condition to the probation; and that he pay $7,500 to Client. The court, however, reversed the Panel's imposition of a lifetime restriction on Attorney's self-management of his trust account.

**Tenn. Sup. Ct. R. 9, § 1.3 (2013);[2]**
**Judgment of the Circuit Court Affirmed and Modified**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Brian S. Faughnan, Memphis, Tennessee, for the appellant, Peter M. Napolitano.

A. Russell Willis, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility.

## OPINION

## Factual and Procedural Background

Client hired Attorney in 2005 to represent her in an employment claim against the Department of the Army ("the Litigation"). Client and Attorney entered into a written fee agreement concerning this representation, and Client paid $22,000 to Attorney pursuant to this agreement. In September 2007, the parties settled the Litigation for $75,000, and this sum was paid into Attorney's trust account ("the Litigation Proceeds"). Client and Attorney entered into an agreement regarding the split of the Litigation Proceeds, with Attorney to pay Client $40,000 and Attorney to retain the $35,000 balance in full satisfaction of his remaining fees and expenses ("the 2007 Fee Agreement").

Shortly after entering into the 2007 Fee Agreement, Attorney contacted Client and stated that he had miscalculated his expenses by approximately $1,800. Attorney asked Client to accept less than the $40,000 previously agreed upon in order to compensate him for this omitted expense. Client refused to modify the 2007 Fee Agreement. Attorney then refused to pay Client the agreed-upon $40,000.

A few days later, Client wrote the administrative law judge who had overseen the Litigation in an effort to rescind the settlement. Client was unsuccessful in this effort.

---

[2] This Court revised Tennessee Supreme Court Rule 9 effective January 1, 2014. This disciplinary proceeding, however, was initiated in November 2013, and it is therefore governed by the 2013 version of the Rule.

Eventually, in April 2008, she filed a complaint with the Board ("the First Complaint"). Client asserted the following in the First Complaint:

> I was awarded $75,000 in a settlement agreement with the U.S. Army at Fort Campbell, Ky. That amount was deposited in my attorney's trust account. The agreement was that Attorney would retain $35,000 and forward $40,000 of the settlement to me. Attorney continues to refuse to pay me my portion. He claims I moved without giving him a forwarding address. I have written to him numerous times to request the settlement *and* my records. I went to his office on Mar. 28 and he refused to see me and ordered his secretary not to release my files.[3]

(Parenthetical references to enclosures omitted). In due course, Attorney responded to the First Complaint and, eventually, one of the Board's disciplinary counsel told Attorney that he owed Client $16,715.50. The calculations resulting in this perplexing amount are not in the record.

By this time, Client had retained another lawyer. After being told by the Board how much it suggested he owed Client, Attorney sent Client's new lawyer a check in the recommended amount along with the explanation that the negotiation of the check would constitute a waiver of all of Client's claims against Attorney. Client refused the check and sought additional action from the Board on the First Complaint. On August 25, 2010, the Board responded to Client as follows:

> Your complaint filed with this office has been reviewed and considered. Our inquiry has not revealed sufficient evidence to proceed

---

[3] A copy of the First Complaint was provided to the Panel via a "Notice of Filing" filed by counsel for Attorney on September 26, 2014, several days after the Panel heard this matter and after one of the Panel members asked to see the First Complaint after the close of proof. The certificate of service attached to the Notice of Filing provides that it was sent to each of the Panel members as well as to counsel for the Board. The record contains no objection by the Board to this document. Indeed, counsel for the Board told the circuit court that the Board provided a copy of the First Complaint to Attorney during discovery. The Panel did not file its Order in this matter until December 5, 2014, months after receiving the copy of the First Complaint. Accordingly, we consider the First Complaint as part of the record that was before the Panel.

- 3 -

against the attorney(s) for violations of the Rules of Professional Conduct. Dismissal of the complaint has been recommended, reviewed and approved in accordance with the rules and procedures of the Board.

The proposed dismissal will become final in 30 days in the absence of your written appeal to the Board setting forth specific and detailed grounds and reasons why the proposed dismissal should not become final.

Client appealed to the Board. On November 3, 2010, the Board responded as follows: "Your appeal of the previous disposition of your complaint has been reviewed by the Board. The grounds for your appeal were fully considered. The Board has approved the prior disposition of your complaint which is now final and closed."

In March 2011, Client filed a lawsuit against Attorney in an attempt to recover the money she claimed she was due. Pursuant to the lawsuit, Client's new lawyer deposed Attorney in September 2012. During the deposition, and while under oath, Attorney stated that none of the Litigation Proceeds remained in his trust account. Attorney also made statements while under oath regarding previous ethical violations, previous bankruptcies, and IRS liens. Convinced that Attorney had (1) mishandled his trust account with regard to the Litigation Proceeds and (2) lied under oath during the deposition, Client's new lawyer filed a second complaint with the Board on behalf of Client in November 2012 ("the Second Complaint").

Following its investigation of the Second Complaint, the Board filed its petition for discipline in November 2013 ("the Petition"). The Petition alleged that Attorney violated Tennessee Supreme Court Rule 8, Rule of Professional Conduct ("RPC") 1.15 by his handling of the Litigation Proceeds; RPC 3.3 and 4.1 by testifying falsely during his deposition; and RPC 8.4 by engaging in professional misconduct.

In August 2014, prior to the hearing on the Petition, Client and Attorney entered into a written settlement agreement disposing of the lawsuit that Client filed against Attorney in 2011 ("the Fee Dispute Settlement"). Pursuant to the Fee Dispute Settlement, Attorney was to pay Client $18,500 on or before August 12, 2014, followed

- 4 -

by ten periodic payments of $750 each.[4]  The payment of these latter sums was to be postponed if Attorney was suspended, "until six (6) months have passed from when his law license is reinstated and if it is not reinstated, no additional payments shall be due."

*The Hearing on the Petition*

At the hearing before the Panel, Attorney testified and conceded that he had made errors with respect to his trust account concerning the Litigation Proceeds.  However, when questioned about removing the Litigation Proceeds from his trust account, Attorney testified, "I still to this day do not agree or admit that I ever converted funds.  Whatever moneys I withdrew for myself, I have always believed that, as I believe today, was legitimately my money."

During the hearing, the Board established that the following questions and answers took place during Attorney's deposition:

> Q.  Okay.  Any Bar complaints related to your New York license?
>
> A.  No.
>
> . . . .
>
> Q.  Okay.  Any lawsuits whatsoever with clients or former clients related to your practice in New York?
>
> A.  No.
>
> . . . .
>
> Q.  Have you or any of your businesses ever filed for bankruptcy protection?
>
> A.  No.
>
> . . . .

---

[4] The circuit court noted in its order disposing of this matter that Attorney had paid Client the $18,500 called for in the Fee Dispute Settlement.

Q. Okay. Any liens ever filed against you?

A. Not that I can recall.

Q. Okay. You'd remember that if it had happened.

A. I imagine I would if I knew about it.

Related to this testimony, the Board established during the hearing that Attorney's license to practice law in the State of New York had been suspended for a period of five years commencing in January 1994 for misappropriating funds from an escrow fund in a real estate transaction and for giving false testimony under oath in connection with the ensuing investigation; that Attorney had filed for personal bankruptcy protection in 1993 and again in 2003; and that the IRS had filed liens against two parcels of real estate that Attorney owned in Montgomery County, Tennessee. Attorney had referenced the debt secured by one of these liens in one of the schedules that he filed in conjunction with his first bankruptcy.

When questioned during the hearing about his answers to these questions, Attorney explained that he thought Client's attorney already knew about the New York suspension. As to the bankruptcies, Attorney stated that he thought he was being asked only about business, as opposed to personal, bankruptcies. Attorney maintained that he had never received notice of the IRS liens.

Attorney called several witnesses to testify on his behalf. Judge John H. Gasaway, III, a circuit judge in the judicial district in which Attorney practiced, testified about his experience with Attorney's conduct in his court. Judge Gasaway testified that Attorney's demeanor was appropriate, he came to court prepared, he adduced and objected to evidence appropriately, and appeared to have good relationships with his clients. Judge Gasaway stated that he considered Attorney "to be a truthful person." Judge Gasaway also explained that Attorney assisted the trial courts by preparing a document that was helpful in resolving domestic relations matters that involved members of the military.

Timothy K. Barnes, juvenile judge, testified that Attorney was very helpful in accepting appointments in juvenile court. Attorney had previously assisted Judge Barnes when Judge Barnes was in private practice, and Judge Barnes had "no reason to believe that [Attorney] was anything other than . . . an upright, upstanding member of the Bar."

Wayne Hibbeler testified that he practiced law with Attorney in the same office for about eighteen months when Mr. Hibbeler was a newly-licensed lawyer. Several

years later, Mr. Hibbeler began practicing with Attorney again. Mr. Hibbeler stated that Attorney had been very helpful to him when he began practicing, and he was happy to begin working with Attorney again later in his career. Mr. Hibbeler described Attorney as a mentor to younger lawyers.

Ross H. Hicks, also a circuit judge in the judicial district in which Attorney practiced, testified that he had known Attorney since 2002, when he became a judge. Judge Hicks stated that he had had some professional contact with Attorney over that time "at least once a week." Judge Hicks described Attorney as "very candid." He had never known Attorney to misrepresent facts and had had "no occasion to question" Attorney's honesty or integrity. Judge Hicks reiterated that Attorney had been very helpful to the courts dealing with domestic relations matters involving military personnel.

Attorney Gary F. Baumann testified that he worked for the United States Army in Fort Campbell as "environmental and ethics counsel." Prior to that position, he was the "labor and employment counsel" and, in that capacity, had many professional dealings with Attorney. Mr. Baumann testified that, in all of his dealings with Attorney, Attorney had "been nothing but truthful and forthcoming."

Steven Joseph Farkas testified that he hired Attorney to represent him in 2012 on an employment matter. Mr. Farkas was very pleased with Attorney's work.

Mark Totten testified that he was the pastor of Attorney's church. Attorney had discussed with him Attorney's dispute with Client, and Mr. Totten described Attorney's demeanor as "remorseful."

After the hearing, the Panel entered the following Findings of Fact:

> [Attorney] was licensed to practice law in the State of New York in 1981. In 1993, his New York license was suspended for five years based on missing funds from his escrow account and giving false testimony in the course of the investigation.

[Attorney] has been a licensed attorney in the State of Tennessee since 2002. His only prior discipline in Tennessee was a private reprimand related to an overdraft of his Trust account.[5]

On December 23, 2005, [Client] retained [Attorney] to represent her in a civil service employment claim against the Department of the Army. [Client] signed a written fee agreement, which provided that [Attorney] was to be compensated at the rate of $200.00 [per hour], support staff at $35.00 per hour, and that [Client] was to be responsible for all other expenses. [Client] paid [Attorney] $5,000.00 towards his retainer fee.

On June 20, 2006, [Client] paid an additional $8,000.00 to [Attorney], for a total payment of $13,000.00.

The retainer fees paid by [Client] were deposited to [Attorney]'s firm trust account and drawn down until the retainer was exhausted on July 21, 2006.

[Client] paid an additional $9,000.00 to [Attorney] on or about September 4, 2006, for a total payment of $22,000.00.

A bench trial was held on [Client]'s employment claim and on or about June 22, 2007, she was awarded $25,000.00 pursuant to a Preliminary Decision by an Administrative Law Judge. Such decision also directed [Client]'s attorney, [Attorney], to file a verified statement of attorney fees and costs.

[Attorney] prepared a Motion for [Attorney]'s Fees and Expenses which he filed on July 27, 2007. According to his Motion, [Attorney]'s fees totaled $49,957.50 and his expenses were $7,120.83 for a total bill of $57,078.33.

After submission of the Motion for Attorney's Fees, [Client] and [Attorney] entered into settlement negotiations with the Army regarding a

---

[5] This private reprimand, issued in 2012, was not related to the Client or the Litigation Proceeds.

global settlement of the case whereby [Client] would waive her right to appeal, would be reimbursed her attorney's fees and expenses, would have certain compensatory time she had earned restored, and would have a poor performance review removed from her personnel file.

On September 18, 2007, [Attorney] sent an e-mail to [Client] explaining how the Army's global settlement offer of $75,000 would be divided. He erroneously stated that his total fees and expenses were $56,358.33 (rather than $57,078.33 as stated in his Motion). He estimated that the time to finalize the settlement would require additional fees of $2,000.00, which he added to his fee amount. He then erroneously deducted $21,000.00 for prior payments by [Client] (rather than $22,000.00) and summarized that the total of unpaid fees and expenses that [Client] would owe was $37,642.00. (Technically, the amount that she would have owed at such time would have been $57,078.33 plus $2,000.00 minus $22,000.00 or $37,078.33). "In an effort to make the settlement option more appealing," [Attorney] then offered to compromise and accept a reduced amount for fees and expenses of $35,000.00, from which he would pay all expenses, so that [Client] would "get a check for $40,000.00 (even)." [Client] testified that [Attorney] represented to her that she would owe nothing further to [Attorney] if she accepted the $75,000.00 offer and paid him $35,000 of the settlement.

[Client] authorized [Attorney] to accept the $75,000.00 settlement offer on this basis and the parties began to work on a written settlement agreement.

On September 21, 2007, [Client] and [Attorney] executed a written negotiated Release and Settlement Agreement which provided for a lump sum payment of $75,000.00. The Settlement Agreement included [Client]'s compensatory award of $25,000.00 and reimbursement of the attorney's fees and expenses reflected in [Attorney]'s Motion. [Client] also waived her right of appeal, received 300 hours of compensatory time, and had the prior performance review removed from her personnel record.

The $75,000 settlement proceeds were deposited into [Attorney]'s Trust account on October 16, 2007 and [Attorney] sent [Client] an e-mail confirming the receipt of these funds.

In his October 16, 2007 e-mail, [Attorney] explained that, when he ha[d] previously calculated the amount to which he was willing to reduce his fee, he had failed to include an additional court reporter expense ($1,878.00) that he had paid out of his own pocket. He thereby asked [Client] to reimburse such expenses by allowing him to keep $36,878.00 rather than the previously reduced amount of $35,000.00[,] which would result in [Client] receiving $38,122.00 rather than the $40,000.00 proposed in the earlier e-mail.

On or about Tuesday, October 23, 2007, [Client] sent an e-mail to [Attorney]'s office in which she stated that she would not accept less than the amount he had agreed upon in his previous e-mail, and that she "should not be [sic] pay for bookkeeping errors." The Panel finds that [Attorney] received such e-mail no later than October 24, 2007, as he billed [Client] for reviewing the e-mail.

Less than one week later, on Monday, October 29, 2007, [Client] wrote a letter to the Administrative Law Judge who had heard the employment case and stated that she wanted "to repeal the NSA on the basis that I signed it under duress and financial threats from my attorney . . . ." No evidence was produced that [Attorney] had made any financial threats to [Client], nor was there evidence produced that he had refused to honor her rejection of his request to allow him to keep $36,878.00 rather than the previously agreed upon fee of $35,000.00.

[Attorney] had not responded to [Client]'s 10/23/07 e-mail prior to her letter to the Administrative Law Judge. [Attorney] asserts that, after October 23, 2007, he lost contact with [Client] and that she failed to remain in contact with his office. There is no dispute that [Client] had moved to Utah and that, on November 30, 2007, she sent her forwarding address to the Kennedy Law firm, where [Attorney] had not practiced for approximately a year. Nor is there dispute that the letter to the Kennedy Law Firm was returned to [Client].

On November 7, 2007, Administrative Law Judge David R. Teeter issued a "Notice to Interested Parties" regarding [Client]'s letter and notified the parties that he lacked jurisdiction to consider the dispute, which would have to be handled under applicable regulations.

- 10 -

. . . .

On or about January 14, 2008, [Attorney] sent a letter to the Board of Professional Responsibility. In such letter, [Attorney] stated that [Client] had moved and that he had been unable to communicate with her. He also stated that "I am retaining the balance of settlement funds belonging to [Client] in my IOLTA account until I either hear from her with instructions, if ever, or with the Board's or Judge's advice as to their disposition. I have prepared her final billing statement but do not have any address to send it or her check to as yet."

As early as February of 2008, [Attorney]'s trust account reached balances less than $40,000.00, when such account's lowest balance reached $33,073.06. The Panel was not provided with sufficient information to determine the extent that funds from other clients, if any, were kept in the trust account and, therefore, theoretically, [Client]'s portion of the account could have fallen below the required amount prior to February of 2008. However, without this additional information, the Panel makes no finding with regard to any violations prior to February of 2008.

On April 14, 2008, [Client] filed a complaint against [Attorney] with the Board of Professional Responsibility based on [Attorney]'s failure to pay her the $40,000.00.

In a letter to the Board on July 14, 2008 requesting advice, [Attorney] indicated that, by his calculations, the portion of the settlement proceeds that were due to [Client] totaled approximately $22,000.00, based upon his assertions that he had incurred additional time since his July 2007 Motion for Attorney's Fees. In his letter, he indicated that he was holding "the balance of the settlement funds belonging to [Client] in my IOLTA account."

In a revised billing statement from [Attorney] dated on or about March of 2008, [Attorney] indicated that his total fees for his time had increased to $67,455.00. Including his previously stated expenses of $7,120.83, his total bill was represented as $74,575.83.

Much of the additional time included by [Attorney] in his March 2008 billing statement is questionable, including time spent communicating

with the Board, as well as a portion of his hourly rate that was not consistent with his July 2007 Motion.

In any event, even in the light most favorable to [Attorney] under the contractual dispute, the most that [Attorney] could have ever charged under his Representation Agreement would have been $74,575.83, as represented by him in Board Exhibit 36. Therefore, after crediting [Client] with prior payments of $22,000.00, the most that [Attorney] could have ever claimed as his interest in the settlement funds was $52,575.83, leaving a balance of at least $22,424.17 that under any set of circumstances would have been the property of [Client]. This fact was admitted by [Attorney] during his testimony at the hearing.

Notwithstanding, not only did [Attorney] fail to keep the disputed funds separate, but starting in March of 2009 his trust account balance fell below $22,424.17. Based upon [Attorney]'s admission that, under any scenario, at least $22,424.17 was the property of [Client], the Panel finds that [Attorney] started converting his client's property to his own use on or about March of 2009.

[Attorney]'s trust account thereafter continued to go below the amount in dispute ($40,000.00) and, under any scenario, the minimum amount of [Client]'s interest ($22,424.17). For example such trust account reached a balance as low as $7,979.58 in August of 2009.

On February 24, 2010, [Attorney] sent a check in the amount of $13,000.83 to the Board made payable to Gayle Connelly and marked "payment in full." The Board held the check and notified [Attorney] that his billed fee appeared to be unreasonable and in violation of Rule 1.5 of the Rules of Professional Conduct.

In late May or early June of 2010, it appears that a disciplinary counsel for the Board indicated to [Attorney] that she had determined that [Client] was owed $16,715.50. In correspondence to [Client]'s attorney, [Attorney] tendered this sum to her on June 4, 2010. The Panel is unable to understand how disciplinary counsel made such determination; however, due to the fact that disciplinary counsel did ma[k]e this determination, the Panel finds that, to the extent [Attorney] relied on such Board determination and to the extent that he kept at least $16,715.50 in his trust

- 12 -

account after June of 2010, the same is a mitigating factor for the time period thereafter.

[Client] retained an attorney, Timothy Nichols, to represent her in approximately May of 2010. [Client] testified that she had made many verbal demands for payment and at least one written demand dated February 25, 2010, but that all of her demands had been ignored.

On March 25, 2011, [Client] filed suit against [Attorney] in the Circuit Court for Montgomery County, Tennessee claiming breach of their agreement regarding division of settlement proceeds. This action was dismissed as time-barred on or about January 31, 2013. The dismissal was appealed and, while the appeal was pending, the parties reached a settlement whereby [Attorney] paid [Client] $18,500.00, with an additional payment of $7,500.00 conditioned on [Attorney] retaining his license to practice law. The Panel finds this to be a final resolution of the contractual dispute between [Attorney] and [Client].

A review of [Attorney]'s trust account records confirms that, after his letter to the Board of January 14, 2008 stating that he was retaining the balance of the settlement funds belonging to [Client] in his IOLTA account, [Attorney] began removing the disputed funds from the trust account.

On February 11, 2008 (approximately four months after receipt of the settlement funds), the balance in [Attorney]'s trust account fell below $40,000.00. In 2008, [Attorney] had received no instructions from the Board or from a Judge regarding the disputed funds. His only instruction was from his client, [Client], demanding payment of the $40,000.00.

Despite [Attorney]'s assertion to the Board in July of 2008 that [Client] was due $22,000.00, his trust account balance fell below this amount by March 31, 2009.

Although [Attorney] told the Board on March 8, 2010 that he believed [Client] was due $13,000.83, his trust account balance had dropped below this figure in July of 2009.

[Attorney] stated in his Answer that he removed funds from his trust account based upon the Board's determination in May of 2010 that [Client]

- 13 -

was due $16,715.50. However, this assertion is not credible based on the fact that his trust account balance fell below $16,000.00 in June of 2009.

By February of 2012, [Attorney]'s trust account balance had reached a negative figure.

. . . .

[Attorney]'s statements to the Board that he was maintaining [Client]'s disputed funds in his trust account were patently false.

In the course of [Client]'s Circuit Court litigation, [Attorney]'s deposition was taken on September 26, 2012 by [Client]'s attorney, Timothy Nichols.

While under oath, [Attorney] was asked in the deposition if he had received any bar complaints related to his New York law license and [Attorney] falsely stated that he had received no complaints. A bar complaint had been filed against [Attorney] resulting in his suspension from the practice of law for five (5) years on January 27, 1994 by the New York Supreme Court Appellate Division for misappropriating $5,000.00 and providing false testimony under oath.

In the same deposition, [Attorney] was asked if he had ever filed a personal bankruptcy and he stated falsely under oath that he had not filed bankruptcy. In fact, [Attorney] had filed two (2) separate Chapter 7 Petitions for bankruptcy. The first Petition was filed on December 6, 1993 in the United States Bankruptcy Court for the Middle District of Tennessee. The second Chapter 7 Petition was filed on July 1, 2003 in the United States Bankruptcy Court for the Middle District of Tennessee. [Attorney] received a personal discharge in each bankruptcy.

In his September 26, 2012 deposition, [Attorney] was asked if any liens had ever been filed against him. [Attorney] testified under oath that he could not recall any liens being filed against him.

A Notice of Federal Tax Lien was filed against [Attorney] and recorded in the Office of the Montgomery County Register of Deeds on August 6, 1993. A second unrelated Notice of Federal Tax Lien was filed against [Attorney] and recorded in the Office of the Montgomery County

- 14 -

Register of Deeds on February 9, 2007. In his 1993 bankruptcy Petition, [Attorney] listed an IRS attachment that had been issued within the year. Schedule E of the Petition lists the amount of the IRS claim as $15,555.28, which is the amount of the recorded Federal Tax Lien of the same year.

[Attorney]'s assertion that he truthfully could not recall any liens is not credible.

(Footnote added, paragraph numbers and parenthetical exhibit references omitted).

Based on these findings of fact, the Panel concluded that Attorney had violated RPC 1.15(a), (b), and (c) (2003)[6] and RPC 1.15 (a), (d), and (e) (2011).[7] In its Order, the Panel also set forth the following "Analysis":

---

[6] These subsections provide as follows:

(a) A lawyer shall hold property and funds of clients . . . that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds. (1) Funds belonging to clients . . . shall be kept in a separate account maintained in an insured depository institution . . . .

(b) Upon receiving funds or other property in which a client . . . has an interest, a lawyer shall promptly notify the client . . . . Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client . . . any funds or other property that the client . . . is entitled to receive . . . .

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests.

Tenn. Sup. Ct. R. 8, RPC 1.15(a), (b), (c) (2003).

[7] These subsections provide as follows:

(a) A lawyer shall hold property and funds of clients . . . that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds.

- 15 -

[Attorney] acknowledges that he did not maintain disputed funds in his trust account as required by the Rules of Professional Conduct. He also acknowledges that his anger and frustration with [Client] and her attempt to repudiate the settlement agreement was not a justification for withdrawing the disputed money. Whether [Client's] actions constituted a breach of the agreement or not, [Attorney] had no basis for taking her money prior to a final resolution of the dispute. His representations to the Board that he was holding the disputed funds in his trust account were simply false.

With regard to the false statements made under oath in his deposition, [Attorney] can have no justification. The questions were straight-forward, unambiguous, simple questions. There was no way that the questions could have reasonably been misunderstood.

[Attorney] asserts that the questions were not relevant and that his answers would not have been admissible in court. [Attorney] is a seasoned attorney who understands that the relevancy of a question is not for the witness to decide and that relevancy does not in any [way] justify providing false answers under oath. His assertion that opposing counsel already knew about his New York suspension, his bankruptcies, and his tax liens does not in any way diminish [Attorney's] duty to answer truthfully.

. . . .

---

(d) Upon receiving funds or other property in which a client . . . has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client . . . is entitled to receive and, upon request by the client . . ., shall promptly render a full accounting regarding such funds or other property.

(e) When in the course of representation a lawyer is in possession of property or funds in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved.

Tenn. Sup. Ct. R. 8, RPC 1.15(a), (d), (e) (2011).

[Attorney] admits that his answers concerning his New York license and his bankruptcies were false but he claims that he truly could not recall having two Federal Tax Liens filed against him, even though he acknowledged the 1993 lien in his bankruptcy. The Panel does not find [Attorney's] claims of impaired recollection credible.

As a mitigating factor, [Attorney] argues that his false statements under oath were not made for personal gain or with an intent to deceive. Nonetheless, [Attorney] intentionally and knowingly made false statements under oath in his deposition. The absence of a purpose for lying under oath is not a particularly mitigating circumstance. Lying under oath for no purpose, or as a default reaction, or simply for the sport of it does not in any way make such behavior less reprehensible or concerning. The Panel finds that [Attorney's] claims of mitigation or justification for his false swearing are actually an aggravating factor.

The oath to testify truthfully is serious business and is central to our legal system. Emotional, upset or distraught litigants are called upon every day to testify truthfully under oath and are punished if they fail to do so. When a lawyer swears falsely or violates his oath to testify truthfully, his conduct "strikes at the heart of our system of justice" and threatens "the very core of a legal system based on probity and honor." See Culp v. BPR, 407 S.W.3d 201, 211 (Tenn. 2013).

. . . .

It has been proven by a preponderance of the evidence that [Attorney] misappropriated his client's money and that he violated the Rules of Professional Conduct with regard to maintaining client funds in his trust account. It has also been proven that [Attorney] testified falsely under oath on three occasions.

Although the Panel did not refer to the RPC that is violated when a lawyer testifies falsely, we note that RPC 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Tenn. Sup. Ct. R. 8, RPC 8.4(c) (2012).

For these ethical violations, and after considering mitigating and aggravating circumstances, the Panel suspended Attorney's license to practice law for five years,

- 17 -

probated after one year "conditioned upon his payment of the remaining $7,500.00 owing to [Client] and restitution to the Board for all costs of this proceeding." The Panel also ordered that Attorney "should *never* have control of his client trust account. Management and control of [Attorney's] client trust account must be conducted by an outside certified public account[ant] or other qualified person who is not employed by [Attorney]." Finally, the Panel ordered that Attorney perform 100 hours of public service work for each year that his suspension is probated. One Panel member dissented to the extent of opining that he "would probate the suspension after 90 days as opposed to after one (1) year."

*Proceedings before the Circuit Court*

Attorney timely filed a petition for writ of certiorari in the Montgomery County Circuit Court challenging the Panel's decision. He simultaneously filed a "Motion for Writ of Supersedeas," requesting that the court stay the Panel's order. The Board also timely filed a separate petition for writ of certiorari, arguing that disbarment was the appropriate punishment. The Board did not request in its petition that Attorney be required to pay Client $40,000 in restitution.

This Court appointed Senior Judge Ben H. Cantrell to hear the case in the Circuit Court of Montgomery County. Judge Cantrell entered a consent order staying the Panel's order "pending appeal and until such time as a final judgment is entered by the Tennessee Supreme Court."

In January 2016, the circuit court held oral argument in this matter; no further evidence was adduced. Attorney's lawyer conceded that Attorney had violated RPC 1.15 in his handling of the Litigation Proceeds in his trust account. Attorney's lawyer maintained, however, that the principles of res judicata should be applied and the matter remanded for a new hearing before a new hearing panel to focus on "facts that are post the dismissal of the first disciplinary complaint." Attorney's lawyer contended that the vast majority of the Panel's findings dealt with the fee dispute that was the subject of the First Complaint and, therefore, should not have factored into the Panel's decision. Attorney's lawyer also argued that the five-year suspension was too harsh and that the $7,500 ordered to be paid to Client was improper. The Board's lawyer responded that the facts regarding the original fee dispute were put before the Panel in order to prove that Attorney had committed ethical violations regarding his trust account and to demonstrate that Attorney was not credible. The Board's lawyer also argued that the Panel should have disbarred Attorney. The Board's lawyer did not argue to the circuit court at the

hearing that Attorney should be ordered to pay Client $40,000 in restitution. However, in its pre-trial brief, the Board contended that "restitution in the amount of $40,000 should be imposed upon [Attorney] with credit given for the $18,500 previously paid."[8] After hearing argument, the circuit court took the matter under advisement.

In March 2016, the circuit court entered a comprehensive Memorandum and Order. The court reversed the Panel's decision that Attorney should never have control of his trust account on the basis that this aspect of the Panel's decision "exceeded [its] jurisdiction." In all other respects, however, the circuit court affirmed the Panel's decision.

Attorney and the Board each filed timely notices of appeal to this Court. Attorney contends that (1) the circuit court should have ruled that the Petition was, in large part, barred by principles of res judicata; (2) the circuit court should not have affirmed the Panel's order that Attorney pay Client $7,500; (3) the circuit court erred by failing to expressly exclude from its consideration an implied finding by the Panel that Attorney violated RPC 8.1, which he was not charged with violating; (4) there is "no substantial material evidence" to support the Panel's determination that his testimony about his tax liens was "knowingly false"; and (5) the length of his suspension is "overly harsh." The Board contends that the circuit court should have disbarred Attorney and should have ordered Attorney to pay Client $40,000 in restitution.

## Standard of Review

"As part of our inherent duty to regulate the practice of law in Tennessee, this Court bears the ultimate responsibility for sanctioning attorneys who violate ethical rules." Walwyn v. Bd. of Prof'l Responsibility, 481 S.W.3d 151, 162 (Tenn. 2015) (citing Bd. of Prof'l Responsibility v. Cowan, 388 S.W.3d 264, 267 (Tenn. 2012)). To satisfy this responsibility, we have established a system whereby lawyers formally charged with ethical violations have a right to an evidentiary hearing before a panel of three attorneys. Id.; Tenn. Sup. Ct. R. 9, § 6.4 (2014). It is the hearing panel's obligation to determine the disciplinary penalty. Cowan, 388 S.W.3d at 267.

---

[8] The Board also had argued before the Panel that Attorney should be ordered to pay $40,000 to Client in restitution.

"A lawyer dissatisfied with a hearing panel's decision may prosecute an appeal to the circuit or chancery court and then directly to this Court, where our review is upon the transcript of the record from the trial court, including the record of the evidence presented to the hearing panel." Walwyn, 481 S.W.3d at 162 (citing Tenn. Sup. Ct. R. 9, § 1.3). Our standard of review on appeal is the same as the trial court's, which may not substitute its judgment for that of the hearing panel's as to the weight of the evidence on questions of fact. Long v. Bd. of Prof'l Responsibility, 435 S.W.3d 174, 178 (Tenn. 2014).

Any reversal or modification of a hearing panel's decision must be based on the reviewing court's determination that the decision (1) violated constitutional or statutory provisions; (2) exceeded the panel's jurisdiction; (3) was made on unlawful procedure; (4) is arbitrary, capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion; or (5) is unsupported by evidence which is both substantial and material in light of the entire record. Id.; see also Cowan, 388 S.W.3d at 267; Tenn. Sup. Ct. R. 9, § 1.3 (2013). While we do not substitute our judgment for the hearing panel's on questions of fact, we review questions of law de novo with no presumption of correctness accorded to the conclusions below. Bd. of Prof'l Responsibility v. Reguli, 489 S.W.3d 408, 417 (Tenn. 2015).

## Analysis

### *Res Judicata*

Attorney argues that "[t]he trial court erred by failing to accord res judicata to the dismissal of [Client's] first disciplinary complaint against" him. We disagree.

"The doctrine of res judicata, also referred to as claim preclusion, bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." Creech v. Addington, 281 S.W.3d 363, 376 (Tenn. 2009) (citing Massengill v. Scott, 738 S.W.2d 629, 631 (Tenn.1987)). "The primary purposes of the doctrine are to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits." Id. (citing Sweatt v. Tenn. Dep't of Corr., 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002)).

"The party asserting a defense predicated on res judicata must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the

same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." Long, 435 S.W.3d at 183 (citing Lien v. Couch, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998); Lee v. Hall, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)). A trial court's decision regarding the application of res judicata presents a question of law which we review de novo without a presumption of correctness. Id. (citing Jackson v. Smith, 387 S.W.3d 486, 491–92 (Tenn. 2012); In re Estate of Boote, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005)).

We hold that the doctrine of res judicata does not apply in this matter.[9] The First Complaint was based on the fee dispute between Client and Attorney. The record indicates that the only investigation the Board conducted in response to the First Complaint was related to the size of the fee that Attorney could ethically charge Client. Significantly, the record contains no indication that the Board considered Attorney's handling of his trust account while it investigated the First Complaint. In contrast, the only ethical violations alleged in the Petition concerned Attorney's handling of his trust account and his testimony under oath. The Petition made no allegations of ethical violations concerning the reasonableness of Attorney's fees. Moreover, the allegations that Attorney testified falsely during his deposition arose from actions Attorney took years after the First Complaint was closed.

We acknowledge that the hearing on the Petition resulted in a great deal of proof about the details of the original fee dispute, but this proof was adduced in order to provide a context for Attorney's actions in dealing with the Litigation Proceeds, i.e., removing them from his trust account. The Petition, and the proof adduced in support of the Petition's allegations, did not deal with the merits of the original fee dispute. The Petition dealt with the actions that Attorney took after the Board told him that, by its unexplained calculations, he owed Client $16,715.50. Accordingly, because the "same claim or cause of action" was *not* involved in both complaints before the Board, the doctrine of res judicata simply does not apply.

---

[9] For the purposes of this decision, we assume, without deciding, that the Board's action of dismissing an ethics complaint after an investigation can be considered a judgment sufficient to support a claim of res judicata if a subsequent ethics complaint otherwise satisfies the criteria for the application of res judicata.

The actual thrust of Attorney's argument is that the Panel and the circuit court erred in considering the facts underlying the fee dispute because the fee dispute was investigated and dismissed by the Board after the Board told Attorney how much money he owed Client. Attorney contends that the principles of res judicata require that the "proceedings in this matter must be limited in scope to events occurring after the August 25, 2010 dismissal of [Client's] first disciplinary complaint." Apparently, Attorney thinks that, if a hearing panel were prevented from hearing about what the circuit court described as the "troubled relationship" between Attorney and Client, his punishment would be less. We disagree. Regardless of the long and winding route that Attorney and Client followed, the gist of the Petition and the punishment imposed were for Attorney's misconduct relative to his trust account and for his lying under oath during his deposition. While prejudice to the party asserting res judicata is not an element of that defense, we emphasize that, as set forth in more detail below, the Panel's punishment of Attorney was appropriate regardless of the initial course of events that eventually arrived at Attorney converting his client's monies and lying under oath.

We hold that Attorney is entitled to no relief on the basis of the doctrine of res judicata.[10]

---

[10] Additionally, although we have chosen to address this issue on the merits, we note that Attorney arguably waived the defense of res judicata because he did not raise it as an affirmative defense in his answer to the Petition. As this Court noted recently, "[r]es judicata is one of the affirmative defenses that must be included in the defendant's answer." Jackson v. Smith, 387 S.W.3d 486, 491 (Tenn. 2012) (citing Tenn. R. Civ. P. 8.03). "As a general rule, a party waives an affirmative defense if it does not include the defense in an answer or responsive pleading." Pratcher v. Methodist Healthcare Memphis Hosps., 407 S.W.3d 727, 735 (Tenn. 2013) (citing Tenn. R. Civ. P. 12.08; Estate of Baker v. King, 207 S.W.3d 254, 265 (Tenn. Ct. App. 2006); Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin, 765 S.W.2d 743, 744 (Tenn. Ct. App. 1987)).

We also note, however, that Attorney argued the doctrine of res judicata at length before the Panel, and the Board did not object on the basis of waiver. Nor does the Board argue in its brief to this Court that Attorney waived his res judicata argument because he failed to raise it in his answer to the Petition. As a result, we have chosen to address this issue on its merits.

*Order that Attorney Pay Client $7,500*

Attorney argues that the Panel's order, affirmed by the circuit court, that he pay Client $7,500 in restitution[11] as a condition to his suspension being probated is not restitution but rather an unauthorized punitive monetary sanction based on the Panel's "attempt to rewrite the terms of a settlement agreement between" himself and Client, referring to the Fee Dispute Settlement. The Board contends that Attorney should be required to pay restitution of $40,000 because the 2007 Fee Agreement between Attorney and Client regarding the Litigation Proceeds called for Client to receive $40,000 of the $75,000 amount. The circuit court affirmed the Panel's order of $7,500 in restitution on the basis that the sum was "apparently the balance" of the Fee Dispute Settlement amount that Client and Attorney "arrived at by negotiation." The circuit court rejected the Board's argument, stating that it was "not persuaded to try [to] make any sense out of the labyrinth created by the parties during their troubled relationship."

Tennessee Supreme Court Rule 9, section 12.7, provides as follows:

> Upon order of a hearing panel, panel or court, or upon stipulation of the parties, *and in addition to any other type of discipline imposed*, the respondent attorney may be required to make restitution to persons or entities financially injured as a result of the respondent attorney's misconduct.

Tenn. Sup. Ct. R. 9, § 12.7 (2014) (emphasis added). As this provision makes clear, restitution is a form a discipline, not merely a method of assessing monies due under a pre-existing fee agreement.

Attorney seeks to overturn the disciplinary sanction of $7,500 restitution to Client on the basis of a contractual provision contained in the Fee Dispute Settlement. That provision requires Attorney to pay Client $7,500 only after his license is reinstated. However, neither the Panel, the circuit court, nor this Court is subject to the Fee Dispute Settlement. Because the contractual provision is not binding on anyone other than the parties to the contract, and because the contractual provision is not the sole basis upon

---

[11] Although the Panel did not label the $7,500 payment as "restitution," the circuit court did. We agree with the circuit court that the Panel's order that Attorney pay Client $7,500 was for restitution.

- 23 -

which an award of restitution may be made, we hold that Attorney is not entitled to relief from the order of restitution on this basis.

Attorney also argues that the Board should be estopped from seeking restitution that would result in Client receiving more than the $16,715.50 that the Board previously concluded was owed to Client upon review of the First Complaint. Again, this argument misses the mark. It is the Panel that ordered restitution, as the Panel was authorized to do. The Panel was within its authority to order restitution even if the Board did not specifically seek it.

Moreover, Attorney's implication that the order of $7,500 restitution also violates principles of res judicata is without merit. After investigating the First Complaint, the Board determined that Attorney's calculation of what he owed Client resulted in Attorney receiving an unreasonable fee, potentially an ethical violation. See Tenn. Sup. Ct. R. 8, RPC 1.5(a) (2008) ("A lawyer's fee and charges for expenses shall be reasonable."). The Board suggested to Attorney what it considered he should pay to Client so as to leave him a fee that would not result in an ethical violation. The Board's calculation of a fee that Attorney could charge without committing an ethical violation was *not* a determination of *restitution*.

After Attorney tendered the suggested amount to Client, the Board dismissed the First Complaint. Thus, the only matter that was settled by the Board's dismissal of the First Complaint was that, following Attorney's tender of the suggested amount to Client, Attorney satisfied the ethical rule under consideration: whether Attorney's fee was unreasonable. Significantly, the Board's calculation of a fee that did not result in an ethical violation was *not* binding on Client. Indeed, after the Board dismissed the First Complaint, Client undertook legal proceedings in an effort to recoup that portion of the Litigation Proceeds that Attorney initially agreed to pay her, as she was entitled to do. In doing so, Client incurred additional expenses[12] and had to wait additional time to be paid. All of these factors were appropriate for the Panel to consider when deciding to order restitution.

---

[12] Client's new attorney testified before the Panel that Client had paid him almost $25,000 in her efforts to collect from Attorney.

In sum, we hold that the Panel's order of $7,500 restitution did not violate a constitutional or statutory provision; did not exceed its jurisdiction; was not made upon unlawful procedure; was not an abuse of discretion; and is not unsupported by substantial or material evidence. Accordingly, we hold that Attorney is entitled to no relief from the order of $7,500 restitution.

We also reject the Board's argument that Attorney should be ordered to pay $40,000 in restitution (less the $18,500 Attorney has already paid Client). Client has indicated in the Fee Dispute Settlement that the total sum of $26,000 is sufficient to satisfy her claim against Attorney. While we are not bound by Client's determination of the sum owed to her by Attorney, the Board has failed to persuade us that the Panel abused its discretion by ordering restitution of $7,500. We point particularly to the Board's prior determination that, in spite of the 2007 Fee Agreement calling for Attorney to pay Client $40,000, the Board concluded that, as of the fall of 2010, Attorney owed Client less than $20,000. The Board has not explained sufficiently its inconsistent positions on this issue nor has it demonstrated that either the Panel or the circuit court erred in concluding that an award of $7,500 restitution is appropriate.

Accordingly, we hold that neither Attorney nor the Board is entitled to relief from the Panel's order that Attorney pay Client the sum of $7,500 as restitution.

*Implied Violation of RPC 8.1*

Attorney claims in his brief to this Court that the circuit court may have erroneously considered "aspects of the . . . Panel's findings that involved conduct for which no allegations were ever set forth in any of the pleadings against [him]." Attorney then refers to a letter he wrote to the Board in January 2008, prior to the First Complaint. In this letter, Attorney sought advice from the Board about how to handle his fee dispute with Client. The record contains no response from the Board to this January 2008 letter, and Attorney states in his brief that he never received a response to this letter.

Attorney appears concerned that both the Panel and the circuit court may have used a statement that Attorney made in this letter against him, thereby impliedly finding him to have violated RPC 8.1. Tennessee Supreme Court Rule 8, RPC 8.1 provides, in pertinent part, that "a lawyer . . . *in connection with a disciplinary matter*, shall not . . . [k]nowingly make a false statement of material fact." Tenn. Sup. Ct. R. 8, RPC 8.1(a) (2008) (emphasis added). The Petition does not allege a violation of RPC 8.1.

- 25 -

In his January 2008 letter to the Board, Attorney stated that he was "retaining the balance of settlement funds belonging to [Client] in [his] IOLTA account until [he] either hear[s] from her with instructions, if ever, or with the Board's or Judge's advice as to their disposition." Attorney appears concerned that both the Panel and the circuit court considered this statement to the Board to have been false in light of Attorney's later withdrawal of the balance of the Litigation Proceeds from his trust account. Attorney, therefore, is concerned that he was sanctioned for violating RPC 8.1 in spite of the fact that no violation of RPC 8.1 was alleged in the Petition.

Our review of the Panel's order, however, makes it clear that Attorney was not punished for violating RPC 8.1. Rather, in its findings of fact, the Panel traces the history of Attorney's handling of the Litigation Proceeds in its effort to discern whether Attorney committed violations of Tennessee Supreme Court Rule 8, RPC 1.15, which Attorney *was* charged with violating.[13] Relevant to this effort, the Panel specifically found that Attorney began "converting his client's property to his own use on or about March of 2009," when his trust account balance fell below the amount that Attorney had himself calculated as owed to Client.

The Panel later referred to Attorney's representations made in response to the Petition: "[Attorney] stated in his Answer [to the Petition] that he removed funds from his trust account based upon the Board's determination in May of 2010 that [Client] was due $16,715.50. However, this assertion is not credible based on the fact that his trust account balance fell below $16,000.00 in June of 2009." This finding is pointed specifically at Attorney's credibility, not at whether Attorney "knowingly ma[d]e a false statement of material fact" "in connection with a disciplinary matter" in his Answer to the Petition. Tenn. Sup. Ct. R. 8, RPC 8.1(a).

The Panel also noted in its Findings of Fact that Attorney's "statements to the Board that he was maintaining [Client's] disputed funds in his trust account were patently false." Taken in context, and in light of the Panel's "Analysis," we view this finding as also directed at Attorney's credibility, not as an implied conclusion that Attorney violated RPC 8.1. Moreover, the Panel considered Attorney's false statements to the Board,

---

[13] As set forth above, RPC 1.15 deals with how an attorney should handle a client's funds in the attorney's possession.

which the Panel characterized as Attorney's "lack of candor," to be an aggravating factor, rather than an ethical violation.

Finally, the "Analysis" section of the Panel's order makes clear that the Panel's focus in terms of ethical violations arising from false statements was on the false answers that Attorney gave to questions while under oath during his deposition, not on whether Attorney misled the Board during its investigation of either complaint. Given our conclusion that the Panel's findings did not implicate RPC 8.1, we also conclude that the circuit court did not impliedly rely on RPC 8.1 in affirming the Panel's sanctions. We hold that Attorney is entitled to no relief on this basis. Moreover, even if we were to conclude that the Panel incorrectly relied upon RPC 8.1, that would not change our conclusion affirming the Panel's decision in this case. In this regard, we emphasize that Attorney's lying under oath during his deposition was an egregious ethical violation of RPC 8.4(c), which provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

*Knowingly False Testimony About Tax Liens*

During his deposition, Attorney was asked if any liens had ever been filed against him. Attorney responded, "Not that I can recall." When prompted, "You'd remember that if it had happened," Attorney testified, "I imagine I would if I knew about it." During the hearing on the Petition, the Board introduced proof that the IRS had filed two liens on real property that Attorney owned in Montgomery County, Tennessee, the county in which Attorney practiced law. The Board also introduced proof that, in conjunction with his first bankruptcy, Attorney listed a debt in the same dollar amount as one of the debts secured by one of the IRS liens. Attorney maintained at the hearing before the Panel that he knew nothing about the IRS liens at the time he was deposed. The Panel specifically rejected Attorney's claim of ignorance, finding that his "assertion that he truthfully could not recall any liens is not credible."

This Court has made clear that, while the fact-finder is permitted to disbelieve a witness' testimony, "it may not construct a theory based on no evidence at all." State v. West, 844 S.W.2d 144, 148 (Tenn. 1992); see also, e.g., Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 512 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally, the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion.") (citing Moore v. Chesapeake & Ohio R. Co., 340 U.S. 573, 575 (1951)). However, we agree with the

- 27 -

Board that Attorney's reference in his bankruptcy filing to the IRS debt secured by the lien provided the Panel a reasonable basis to infer that Attorney, in fact, was aware of the IRS lien at the time he testified at his deposition.

Moreover, the proof overwhelmingly supports the Panel's conclusion that Attorney testified falsely on two other occasions during his deposition, thereby committing professional misconduct by "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." RPC 8.4(c). Even if the proof did not support the Panel's conclusion regarding Attorney's testimony about the IRS liens, Attorney's other blatantly false testimony supports the sanctions imposed by the Panel.

We hold that Attorney is entitled to no relief on this basis.

*Punishment*

Attorney contends that the length of his suspension "is overly harsh and not supported by reference to comparable prior precedent." He also argues that the Panel applied the wrong ABA standards and ignored "pertinent mitigating factors" in assessing his punishment. The Board, in contrast, argues that the Panel should have ordered Attorney disbarred.

"A hearing panel must consider the applicable provisions of the ABA Standards when imposing discipline." Walwyn, 481 S.W.3d at 166 (citing Tenn. Sup. Ct. R. 9, § 8.4; Sneed v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 617 (Tenn. 2010)). These ABA Standards provide "'guideposts'" rather than bright-line rules. Reguli, 489 S.W.3d at 424 (quoting Bailey v. Bd. of Prof'l Responsibility, 441 S.W.3d 223, 232 (Tenn. 2014)). ABA Standard 3.0 sets forth four factors the hearing panel should consider when deciding upon the severity of the discipline to be imposed: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Std. 3.0.

ABA Standard 9.22 sets forth a number of aggravating factors, including prior disciplinary offenses; dishonest or selfish motive; the submission of false statements during the disciplinary process; refusal to acknowledge the wrongful nature of the conduct; substantial experience in the practice of law; and illegal conduct. ABA Std. 9.22(a), (b), (f), (g), (i), and (k). ABA Standard 9.32 sets forth a number of mitigating factors, including the timely good faith effort to make restitution; the full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings; the

- 28 -

attorney's character or reputation; remorse; and the remoteness of prior offenses.  ABA Std. 9.32(d), (e), (g), (l), and (m).

"When reviewing disciplinary sanctions, this Court reviews comparable cases to ensure consistency in discipline."  Reguli, 489 S.W.3d at 424 (citing Bailey, 441 S.W.3d at 236).

In its Order, the Panel considered ABA Standards 4.11,[14] 4.61,[15] 5.11,[16] 6.11,[17] and 8.1.[18]  The Panel then considered six aggravating factors:  (1) Attorney's previous five-year suspension in New York for similar violations; (2) his motive of personal gain in appropriating Client's funds; (3) his "lack of candor with the Board in his repeated claims that he was maintaining the disputed [Client] funds in his trust account"; (4) his "outright perjury" during his deposition; (5) his "unwillingness or inability to acknowledge the gravity of his perjury indicating only that he was sorry he had 'shot

---

[14] "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

[15] "Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client."

[16] "Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; . . . ; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

[17] "Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding."

[18] "Disbarment is generally appropriate when a lawyer: . . . (b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."

from the hip' in his sworn [deposition] testimony"; and (6) his "significant and substantial experience in the practice of law." The Panel also considered four mitigating factors: (1) the "high opinion [that] local judges and members of the bar have of [Attorney] in terms of his legal skills, his trial preparation, his helpfulness to the Courts, and his assistance to younger attorneys"; (2) Attorney's Fee Dispute Settlement agreement with Client regarding the disputed funds, which Attorney had "thus far fulfilled"; (3) the fact that Attorney's misconduct did not involve multiple clients; and (4) Attorney's acknowledgment that his misappropriation of Client's funds was wrong.

After considering and distinguishing relevant precedent, the Panel expressed concern that, given his prior suspension for similar conduct, Attorney "would have *any* issues related to impropriety *vis a vis* handling client funds and being truthful." Nevertheless, the Panel declined to disbar Attorney on the basis that he "is a competent attorney who does good legal work, is consistently prepared, and does not neglect his cases. He assists the courts in which he practices and mentors younger lawyers in trial practice skills."

As set forth above, we will not change the Panel's decision to impose a five-year suspension unless the suspension (1) violates a constitutional or statutory provision; (2) exceeds the Panel's jurisdiction; (3) results from an unlawful procedure; (4) is arbitrary, capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion; or (5) is unsupported by evidence which is both substantial and material in light of the entire record. Both parties contend that the Panel's decision was arbitrary, capricious, and/or an abuse of discretion.

Attorney argues that the Panel erred in considering ABA Standards 4.61 and 6.11. We agree. ABA Standard 4.61 provides that "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client." The gist of the Board's case against Attorney was not that Attorney deceived Client, but that he failed to maintain her funds in his trust account as he was required to do and that he converted those funds.

ABA Standard 6.11 provides that "[d]isbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information . . . ." While the record certainly supports the Panel's finding that Attorney lied under oath during his deposition, the record does not support the inference that Attorney's false testimony was given with

- 30 -

the intent to deceive a court. The deposition was taken for discovery purposes in conjunction with Client's lawsuit against Attorney for breach of their 2007 Fee Agreement. The deposition questions which Attorney answered falsely were not relevant to the substantive merits of that action. Accordingly, it does not appear to us that Attorney falsely testified in order to deceive in some way the court adjudicating the lawsuit.

However, given that the Panel declined to impose the disbarment that both of these ABA Standards consider to be "generally appropriate," the Panel's consideration of them, in our view, does not appear to have prejudiced Attorney. Accordingly, we hold that Attorney is not entitled to relief on this basis.

Attorney also complains that the Panel should not have considered ABA Standard 4.11, which provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." Attorney appears to take issue with the Panel's conclusion that he "knowingly convert[ed]" Client's property when he removed all of the Litigation Proceeds from his trust account, claiming that he merely exercised "extremely poor judgment" after the "statute of limitations had run on any civil cause of action." We disagree that the Panel erred in considering ABA Standard 4.11. The Panel found that Attorney's trust account had reached a negative balance by February 2012. The lawsuit that Client filed against Attorney was not dismissed as time-barred until January 2013. Attorney is not entitled to relief on this basis.

Attorney also contends that the Panel ignored certain mitigating factors, specifically the length of time that had passed since Attorney's New York suspension; Attorney's two attempts to tender checks to Client, the first in the amount of $13,000.83, and the second in the amount of $16,715.50; and Attorney's "truthful and cooperative [conduct] in this proceeding." Respectfully, we disagree that these factors entitle Attorney to a reduction of his suspension.

Finally, Attorney argues that "comparable prior precedent does not support a five-year suspension." The Board, on the other hand, points to the ABA Standards applied by the Panel in this case, all of which provide that disbarment is generally appropriate for the ethical violations that Attorney committed. The Board asserts, repeatedly, that "there is simply no reasonable argument against" the penalty of disbarment in this matter. The Board does not refer us to any comparable cases.

We disagree with both parties that the Panel erred when it imposed a five-year suspension on Attorney. As set forth above, we agree with Attorney that the Panel erred when it considered ABA Standards 4.61 and 6.11. This error cuts in Attorney's favor and against the Board's position. Attorney also adduced significant favorable testimony from respected members of the bench and bar attesting to his excellent advocacy skills as well as to his willingness to assist the courts and to mentor young lawyers. Nevertheless, Attorney's conduct in removing disputed funds from his trust account when he knew that his dispute with Client was ongoing was a blatant violation of Attorney's ethical obligations. Moreover, Attorney's false testimony during his deposition was an especially egregious ethical violation. While we disagree that the Panel committed reversible error when it refrained from disbarring Attorney, we agree that a significant suspension was in order in light of the severity of Attorney's misconduct, particularly in light of his previous suspension for similar misconduct.

We have reviewed the decisions relied upon by Attorney as indicating that a shorter suspension should be imposed. In our view, however, those decisions are sufficiently distinguishable from Attorney's case that they do not require us to conclude that the Panel erred by imposing a five-year suspension. In re Darren T. Cole, No. M2015-00126-SC-BAR-BP (Tenn. Feb. 3, 2015) (Order), dealt with a lawyer who was suspended for three years for various ethical infractions, none of which included the conversion of client property or lying under oath. Similarly, neither Board of Prof'l Responsibility v. Allison, 284 S.W.3d 316 (Tenn. 2009) (sixty-day suspension), nor Nevin v. Bd. of Prof'l Responsibility, 271 S.W.3d 648 (Tenn. 2008) (six-month suspension), involved a lawyer who had converted client monies or who had lied under oath. Milligan v. Bd. of Prof'l Responsibility, 166 S.W.3d 665 (Tenn. 2005), and Dockery v. Bd. of Prof'l Responsibility, 937 S.W.2d 863 (Tenn. 1996), both dealt with lawyers who did misappropriate client funds, and both lawyers were suspended for two years. Neither of these cases involved the same lawyer giving false testimony during a deposition, however.

While not cited by either Attorney or the Board, we think the case of Board of Prof'l Responsibility v. Bonnington, 762 S.W.2d 568 (Tenn. 1988), is instructive. In that case, the attorney repeatedly misappropriated funds belonging to an estate. Id. at 569. Eventually, the attorney self-reported his transgressions and repaid the converted monies. Id. Nevertheless, the attorney received a four-year suspension. Id. at 568. One of the justices dissented, arguing that the attorney should have been disbarred. Id. at 571 (Harbison, C.J., concurring in part and dissenting in part). The case did not involve the

attorney also lying under oath during a deposition, nor had the attorney been disciplined earlier for similar transgressions.

As this Court stated in Bonnington, "the objective of achieving uniformity of punishment in disciplinary proceedings does not require that every named offense be accorded identical punishment. Like murder in the first degree, lawyer misappropriation of funds is subject to more than one punishment." Id. at 570–71. We hold that neither Attorney nor the Board is entitled to relief from the Panel's imposition of a five-year suspension.

## **Conclusion**

The circuit court affirmed the Panel's decision with the exception of the Panel's order that Attorney "*never* have control of his client trust account." The Board conceded that the Panel exceeded its jurisdiction in that regard, and the circuit court reversed that portion of the Panel's order. However, the circuit court failed to impose any requirements for a practice monitor in the event Attorney is successful in having his law license reinstated after serving his one year of active suspension. We hold that, in the event Attorney is successful in having his law license reinstated after serving his first year of suspension, he must have a practice monitor for the remaining years that his suspension is probated. The practice monitor shall supervise Attorney's compliance with trust account rules and accounting procedures. See Tenn. Sup. Ct. R. 9, § 12.9 (2016).

In sum, we affirm and modify the circuit court's judgment. Attorney is suspended for a period of five years, probated after a period of one year, conditioned upon his payment of $7,500 restitution to Client and the payment to the Board for all of its costs in this proceeding. For each year that his suspension is probated, Attorney shall perform one hundred hours of public service work. Moreover, for each year that his suspension is probated, Attorney is required to have a practice monitor, who shall supervise Attorney's compliance with trust account rules and accounting procedures. See Tenn. Sup. Ct. R. 9, § 12.9 (2016).

- 33 -

The costs of this cause are taxed to Attorney, for which execution may issue if necessary.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE